## AFFIDAVIT

I, Lisa Rudnicki, having been duly sworn, on oath depose and state that:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), and have been so employed since February, 1996. In that capacity, I investigate violations of the federal firearms statutes and have participated in many investigations relating to the unlawful possession of firearms.

2. Based on my training and experience, I am aware that Title 18, United States Code, Section 922(g)(1) makes it a federal offense for any individual who has previously been convicted of a felony offense to possess a firearm or ammunition in or affecting interstate commerce. Having so stated, I make this affidavit in support of a complaint charging **KING BELIN** with being a felon in possession of a firearm and ammunition in violation of that statute.

3. The statements contained in this affidavit are based on my own investigation, work done by other ATF Agents, and on information provided to me by officers of the Boston Police Department ("BPD"). This affidavit is submitted for the limited purpose of establishing probable cause to believe **BELIN** violated 18 U.S.C. §922(g)(1), and therefore does not set forth all of the information that I and other law enforcement personnel have obtained during the course of this investigation.

4. At approximately 6:45 p.m. on September 17, 2012, Boston Police dispatchers put out a call for a group of kids fighting at the intersection of Norfolk and Fessenden Streets in Mattapan. Officers Phillip Bissonnette and Thomas Quinn, who were on patrol in the area, responded to the call. Both officers (as well as others who responded to the scene) were working out of District B-3 in Mattapan and knew that the address at issue was adjacent to Norfolk Park and a place where there has historically been a substantial amount of firearm-related incidents.

5. Upon arrival, the officers saw a group of five men walking on Norfolk Street near the intersection of Mildred Avenue. When the officers approached this group to speak with them, Officer Bissonnette noted that one member of the group peeled away and began walking down Mildred Avenue and that, in doing so, avoided making eye contact with the officers as he passed them. Officer Bissonnette recognized this individual to be **KING BELIN**, who officer Bissonnette had arrested in 2009 for illegally carrying a firearm, and noted that **BELIN** was wearing what appeared to be a heavy sweatshirt despite the warmth of the evening. Officer Bissonnette followed **BELIN** and called out to him, saying, "Yo King, what's going on."

6. Officer Bissonnette attempted to engage **BELIN** in conversation as **BELIN** continued to move down Mildred Street, immediately adjacent to a playground where adults and children were playing. When **BELIN** finally acknowledged Bissonnette and

turned towards him to speak, Officer Bissonnette asked **BELIN** if "he had anything on him."

7. Bissonnette noted that **BELIN**'s demeanor immediately changed after being asked this question, becoming nervous, taking a deep breath and then breathing at a quick and shallow rate. **BELIN** then turned away from Bissonnette and looked around as if searching for a means of escape. Based on the totality of the circumstances, Officer Bissonnette decided to pat frisk **BELIN** for weapons.

8. Officer Bissonnette took hold of **BELIN**'s right arm in order to stop him from fleeing and to perform the frisk. In response, **BELIN** immediately reached to his waist with both hands. Concerned that **BELIN** might be reaching for a weapon, Bissonnette grabbed both of **BELIN**'s hands, held them to his chest, and told **BELIN** to relax. Rather than comply, **BELIN**'s resistance only increased, as he hunched over and again attempted to reach to his waist in disregard of Bissonnette's repeated commands. Ultimately, other officers came over to assist and were able put **BELIN** to the ground and handcuff him so that he could be frisked.

9. Once **BELIN** was secured, officers rolled **him** onto his side in order to perform the pat frisk. When they did so, his sweatshirt pulled up revealing a firearm tucked in his waist. Officer Bissonnette removed the gun and placed **BELIN** under arrest

based on his knowledge that **BELIN** could not legally carry a firearm based on his prior gun conviction.

10. The firearm recovered from **BELIN**'s waist was a Ruger Model P95 9mm semi-automatic handgun ("the Ruger 9mm") that had an obliterated serial number and was found to contain 11 rounds of 9mm ammunition. During a post-arrest search of **BELIN** conducted on scene, officers discovered that he was carrying four bags of marijuana and a package of Newport cigarettes that contained a plastic bag with 5 more rounds of 9mm ammunition.

11. After the Ruger 9mm and the 16 rounds of ammunition recovered had been processed and placed into evidence, the gun successfully test fired and the rounds it contained certified to be ammunition by the BPD's Ballistics Unit, they were inspected by ATF S/A Mattheu Kelsch, who is trained to perform interstate commerce nexus examinations. S/A Kelsch examined the Ruger 9mm and the 16 rounds of ammunition, confirmed that they were a "firearm" and "ammunition" for purposes of federal law, and determined that both the firearm and all of the ammunition had been manufactured outside Massachusetts, meaning that they had traveled across state lines or international boundaries prior to being seized in Dorchester on September 17, 2012.

12. The firearm and the magazine in it at the time of **BELIN**'s arrest were also examined by BPD's Latent Print Unit. On October 18, 2012, fingerprint examiners determined that two fingerprints separately recovered from the magazine of the Ruger

9mm and the plastic bag containing the five extra rounds of ammunition were from **BELIN**'s left thumb.

13. I have reviewed **BELIN'S** criminal record as maintained by the Massachusetts Criminal History Systems Board. It reveals, among other things, that **BELIN** was convicted in 2010 in Suffolk Superior Court on charges of possessing a firearm without a license. Based on my training and experience, I know that this is a crime punishable under Massachusetts law by imprisonment for more than one year.

14. Based on the foregoing, I submit that there is probable cause to believe that, on or about September 17, 2012, **KING BELIN**, having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, did possess, in and affecting commerce, a firearm and ammunition in violation of Title 18, United States Code, Section 922 (g)(1).

*Lisa A Rudnicki*
LISA RUDNICKI
Special Agent, ATF

Sworn and subscribed to before me this 13th day of November, 2012.

MARIANNE B. BOWLER
U.S. MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS