UNITED STATES DISTRICT COURT
                         DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * *
UNITED STATES OF AMERICA      *
                              *
            vs.               *        CRIMINAL ACTION
                              *        No. 13-10048-FDS-1
KING BELIN                    *
                              *
* * * * * * * * * * * * * *

            BEFORE THE HONORABLE F. DENNIS SAYLOR, IV
                 UNITED STATES DISTRICT JUDGE
                     **PRETRIAL CONFERENCE**

A P P E A R A N C E S

            UNITED STATES ATTORNEY'S OFFICE
            1 Courthouse Way, Suite 9200
            Boston, Massachusetts 02210
            for the United States
            By:  John A. Wortmann, Jr., AUSA


            FEDERAL PUBLIC DEFENDER OFFICE
            51 Sleeper Street, 5th Floor
            Boston, Massachusetts 02210
            for the defendant
            By:  Ian Gold, Esq.



                              Courtroom No. 2
                              John J. Moakley Courthouse
                              1 Courthouse Way
                              Boston, Massachusetts 02210
                              May 14, 2014
                              1:15 p.m.



                  CAROL LYNN SCOTT, CSR, RMR
                    Official Court Reporter
                 One Courthouse Way, Suite 7204
                  Boston, Massachusetts 02210
                       (617) 330-1377

**I N D E X**

WITNESS:            DIRECT    CROSS    REDIRECT    RECROSS

DAVID ROSMARIN

  By Mr. Gold      10

1                    P R O C E E D I N G S

2            THE CLERK:  All rise.

3        Please be seated.

4            MR. GOLD:  Your Honor, the doctor is in the

5    back.

6            THE CLERK:  Should I let him know?

7            MR. GOLD:  Who?

8            THE CLERK:  The doctor.

9            MR. GOLD:  Oh, I don't think he was waiting

10   outside.  He should be on his way in.

11        (Pause in proceedings.)

12            THE COURT SECURITY OFFICER:  Is that him?

13            MR. GOLD:  No.

14            THE CLERK:  No.

15        (Pause in proceedings.)

16            MR. GOLD:  Can I just step out briefly, Your

17   Honor?

18            THE COURT:  Yes.

19        (Pause in proceedings.)

20            MR. GOLD:  I just left him at the bathroom so

21   I didn't ask exactly how long that would be.

22            THE COURT:  Okay.

23        (Pause in proceedings.)

24            MR. GOLD:  Can I just set up briefly, Your

25   Honor?

1              **THE COURT:**  Yes.

2          (Pause in proceedings.)

3              **MR. WORTMANN:**  Your Honor, can I just say for

4    the record --

5          (Whereupon, Dr. Rosmarin entered the courtroom.)

6              **THE COURT:**  Are we all set to go?

7          All right.  On the record, it is 1:18.

8    Mr. Wortmann.

9              **MR. WORTMANN:**  Your Honor, thanks.  I just

10   want you to understand that if there is anything that deals

11   with representation issues, I am happy to walk out at any

12   time.  You just give me the nod and I'll go.

13         And if it turns out that these are so intertwined

14   you want me to go, I'll go.  I don't want to be here when I

15   shouldn't be.

16             **THE COURT:**  All right.  I understand that.

17         Let's start with you present and let's talk about

18   mental health issues.  Mr. Gold, what is going on?

19             **MR. GOLD:**  Well, Your Honor, I think

20   Mr. Wortmann's comment was based in part from my thinking

21   out loud with him which is that this might be a case where

22   the issues are intertwined.

23         Let me just report that what's happened is

24   Dr. Rosmarin is here in the gallery.  He met with Mr. Belin

25   I think for an hour and a half, if not more, after we

1   adjourned this morning and does have an opinion which I will

2   describe.  Mister -- Dr. Rosmarin is here and available to

3   testify.  But it's, I don't know, an attorney specific

4   opinion, that is, that Mr. Belin is under a, something like

5   a delusion about me and that has affected his ability to

6   confer with me and his competence to stand trial with me as

7   his attorney.  I could have Dr. Rosmarin testify.  I want to

8   confer with Mr. Belin about it briefly first.

9          But that said, the prescription might be my

10  withdrawal.  I think that might be where we end up.  And

11  given the representations I made, I think it might be best

12  to move for a competency evaluation, have Dr. Rosmarin

13  testify and then see where we are after he testifies.

14          **THE COURT:**  Mr. Wortmann, what is your

15  schedule today?

16          **MR. WORTMANN:**  I have got a two o'clock that

17  should last for about ten minutes, Your Honor.

18          **THE COURT:**  Do you still need to meet with a

19  witness at 1:30?

20          **MR. WORTMANN:**  I prepped the witness over the

21  phone.

22          **THE COURT:**  Okay.  All right.

23          **MR. WORTMANN:**  And then a three o'clock.

24          And let me just say, Your Honor, that if we are

25  going to start dealing with substantive competency issues,

1    my view is that if the doctor believes that Mr. Belin is

2    incompetent within the meaning of 18 U.S.C., 4241, that we

3    should have a report to that effect and then the government

4    should have the right to have an independent examination

5    done, usually by doctors at FMC Devens.

6         So if it's that he is incapable of working with

7    Mr. Gold, I guess that's one thing and the solution would be

8    to get a new lawyer.  If he is incapable of working with

9    anybody, then we want to have the opportunity to see his

10   report and test his report by an independent examination.

11        **THE COURT:**  Well, I understand.  I guess I am

12   having trouble understanding quite how this is unfolding but

13   it seems to me that I need to hear it a step at a time.

14        It seems to me that if what we have here is an

15   opinion that is a psychiatric or psychological diagnosis as

16   to a particular condition that affects the representation as

17   opposed to his competency to stand trial, I ought to at

18   least hear what the general outline of that is.  It may

19   be --

20        **MR. WORTMANN:**  I have no problem with that.

21        **THE COURT:**  Maybe the government needs to

22   respond, maybe not.

23        It is also not clear to me that hearing that

24   opinion would necessarily reveal either attorney/client

25   privileged information or attorney work product or defense

1    strategy or anything else that would be improper for the

2    government to hear, Mr. Gold.  In other words, suppose we

3    put the doctor on the stand and just let him talk under oath

4    and give a sense of where this is going and what the basis

5    of his opinion is so I can at least understand what his

6    viewpoint is.

7            Does that have to be ex parte?  Is that necessarily

8    going to reveal information that ought not to be revealed to

9    the government?

10           **MR. GOLD:**  Your Honor, I think it will simply

11   inevitably reveal issues pertaining to trial strategy,

12   opinions about the case --

13           **MR. WORTMANN:**  I guess, Your Honor, if I could

14   make a suggestion --

15           **THE COURT:**  Yes.

16           **MR. WORTMANN:**  -- that I'll leave.  We will

17   have the transcript.  If you at the end of this conclude

18   that this is something that I should hear, then I can go

19   back and read the transcript.

20           **THE COURT:**  Why don't we do a hybrid version

21   of that.  Why don't we put him on the stand, get his

22   qualifications, the basis for his opinion, maybe the opinion

23   itself, start down the path, and then if we get to a point

24   that is sensitive, we will send you out of the room.

25           **MR. WORTMANN:**  Okay.  That makes sense.  Thank

1   you.

2                    **THE COURT:**  Is that all right, Mr. Gold?

3              **MR. GOLD:**  Yes.

4                    **THE DEFENDANT:**  No, no, I object to that.  I

5   don't want him on the stand.  It's supposed to be my opinion

6   if I want him on the stand and I don't want him on the stand

7   testifying to any of that crap about me.

8                    **THE COURT:**  Well --

9              **MR. GOLD:**  Your Honor, Mr. Belin, I conferred

10  with him briefly about this and he told me no and I went

11  ahead talking because of the nature of the issue I'm putting

12  forward having to do with his, Mr. Belin's, I don't know,

13  competency to make these decisions.

14        On the other hand, he said what he said.  He said

15  in court earlier today that he wants me off the case.  The

16  gist of Rosmarin's, Dr. Rosmarin's opinion is kind of

17  heading in the same direction.

18        I would move on his behalf that it would be a

19  benefit to the Court to hear what he has to say.

20                    **THE COURT:**  All right.  It seems to me that if

21  the question is should Mr. Gold be permitted to withdraw on

22  what is almost literally the eve of trial because he and the

23  defendant are not getting along, the answer is almost

24  certainly not.

25        But if there is an underlying mental health issue,

1   I think I need to explore that.  And at some point, of

2   course, both those issues touch on effective assistance of

3   counsel in a Constitutional dimension but I think I need to

4   hear the testimony.  And I think unless anyone disagrees

5   other than Mr. Belin that I need to hear the testimony, even

6   over his objection, what is the government's view,

7   Mr. Wortmann?

8            MR. WORTMANN:  Well, Your Honor, I think

9   Mr. Belin has a choice.  If he says no testimony, then we go

10  to trial on Monday.  But we still have the issue of whether

11  there is an underlying issue of competency which suggests

12  that he is not competent to raise that objection.

13            THE COURT:  Right.

14            MR. WORTMANN:  So I think you need to go

15  forward.

16            MR. GOLD:  I agree, Your Honor.

17            THE COURT:  All right.  I am going to have

18  Dr. Rosmarin take the stand and let's get started on this.

19            THE DEFENDANT:  Can I just object to him

20  taking the stand?

21            THE CLERK:  Before you take the stand I will

22  swear you in.

23            THE COURT:  Hold on.  Mr. Belin, your

24  objection is noted.  You said you do object to him going

25  forward and that will be part of the record.

1                   **THE DEFENDANT:**  Yes.

2                   **THE COURT:**  All right.  Go ahead.

3                   **DAVID ROSMARIN, Sworn**

4                   **THE CLERK:**  Thank you.  Please be seated.

5            State your name for the record, spelling your last

6      name.

7                   **THE WITNESS:**  David Rosmarin, R-O-S-M-A-R-I-N.

8                   **THE COURT:**  Let's do the basics, the

9      background, qualifications and the like.

10                   **MR. GOLD:**  And, Your Honor, I would seek leave

11     to -- I don't have Dr. Rosmarin's CV in paper form but I can

12     submit it after the hearing if the Court wishes.

13                   **THE COURT:**  Let's just get the basics.

14                   **MR. GOLD:**  Okay.

15                   **DIRECT EXAMINATION**

16     BY MR. GOLD

17     **Q.**  Dr. Rosmarin, could you describe your current

18     employment.

19     **A.**  Yes, I am in the private practice of forensic

20     psychiatry.  I am the senior forensic psychiatrist at McLean

21     Hospital.

22     **Q.**  Could you describe your educational background in

23     summary form and your professional experience after your

24     obtaining an MD.

25     **A.**  Yes, I have a degree in neuroscience from Colgate

1    University.  I have my MD from Boston University School of

2    Medicine.

3                   **THE DEFENDANT:**  Your Honor --

4    **A.**  I did my internship --

5                   **THE DEFENDANT:**  Your Honor, I do not

6    understand what is going on here.  I just objected and are

7    you, are you with me, lady?

8                   **THE COURT:**  She is taking it down, yes.

9                   **THE DEFENDANT:**  All right.  I don't

10   understand, I just objected to him being on the stand.  I

11   told you I didn't want you on the stand.

12                   **THE COURT:**  All right.  I have overruled that

13   and I am going to hear what he has to say, okay, Mr. Belin?

14                   **THE DEFENDANT:**  I don't want Ian Gold on my

15   case either.

16                   **THE COURT:**  All right.  We are going to get to

17   that.

18           All right.  An MD from BU Medical School.  Go

19   ahead.

20                   **THE WITNESS:**  I did my internship at Boston

21   City Hospital.  I did my psychiatric training at the

22   University of Massachusetts Medical Center where I was chief

23   resident in forensic psychiatry and attended Harvard Law

24   School as a special student.

25           I have worked in several state hospitals for

1    several years.  And I'm board certified in general

2    psychiatry and was an examiner in general psychiatry for the

3    National Boards.  I am board certified in forensic

4    psychiatry and was for some years an author of the National

5    Exam in Forensic Psychiatry and have an active practice in

6    forensic psychiatry.

7    BY MR. GOLD

8    **Q.**  Are you currently, you may have mentioned this,

9    Dr. Rosmarin, but are you currently credentialed as a

10   forensic psychiatrist, what is that credential and how

11   current is it?

12   **A.**  Well, I have a license to practice psychiatry in

13   Massachusetts, medicine and psychiatry in Massachusetts, and

14   I'm board certified in general psychiatry and board

15   certified in forensic psychiatry by the American Board of

16   Medical Specialties, specifically the American Board of

17   Psychiatry and Neurology.

18   **Q.**  Have you ever been subjected to any form of disciplinary

19   proceeding?

20   **A.**  No.

21   **Q.**  Do you have any publications to your credit?

22   **A.**  Publications of two types, some with regard to AIDS and

23   dangerousness.  I have taught widely around assessments of

24   competency and dangerousness and insanity and I have, I

25   authored many classified documents during my years at CIS

1    (ph.).

2    **Q.**  Could you elaborate a little bit on, in what context you

3    have given trainings or taught people in this area of

4    expertise?

5    **A.**  I have been an invited speaker at various medical

6    centers and at the American Academy of Psychiatry and Law

7    where I was on the Executive Committee for several years.

8                    **MR. GOLD:**  Unless Your Honor wants to hear

9    more of...

10   BY MR. GOLD

11   **Q.**  Have you and I worked together before?

12   **A.**  Yes.

13   **Q.**  On what types of cases?

14   **A.**  Criminal cases.

15   **Q.**  And did there come a time when I contacted you about the

16   case of Mr. Belin?

17   **A.**  Yes.

18                    **THE DEFENDANT:**  Don't talk about me.  Don't

19   talk about me.  Don't talk about Mr. Belin at all.

20                    **THE COURT:**  All right, I have overruled that,

21   Mr. Belin.

22                    **THE DEFENDANT:**  I don't care.  Well, I don't

23   care.  You don't care --

24                    **THE COURT:**  Mr. Belin, I am going to ask you

25   to remain quiet.

```
 1              THE MARSHAL:  Sir, do you want him removed or
 2   do you want him to stay out in the courtroom?
 3              THE COURT:  Not yet.  Mr. Belin, though, if
 4   you do keep interrupting, you may have to be removed so take
 5   that as a warning.
 6              THE DEFENDANT:  I don't want him talking about
 7   me.  He's not supposed to be talking -- he can talk about
 8   his experience and all that other stuff.  Why -- he's not
 9   supposed to talk about me if I don't want him talking about
10   me.
11              THE COURT:  Well, Mr. Belin, you are --
12              THE DEFENDANT:  That's what he told me in our
13   meeting that we had.  I don't even know how I became this
14   patient.  It's not upon my request.
15              THE COURT:  Well, Mr. Belin, as I understand
16   it, you wish to get a new lawyer.
17              THE DEFENDANT:  Absolutely.
18              THE COURT:  All right.  And today is Wednesday
19   and the trial is supposed to start on Monday.
20              THE DEFENDANT:  That's not a problem for me.
21              THE COURT:  Well, it is not a problem with you
22   but it is a problem for me, all right.  And I am only going
23   to do it if there is a good reason to.  And your attorney is
24   trying to convince me that the issue is not simply your
25   personal preference but that there is --
```

1              **THE DEFENDANT:**  He just told me --

2              **THE COURT:**  Please don't interrupt me.  It is

3      not your personal preference but that there is something

4      else going on here.

5              **THE DEFENDANT:**  It is.  I'm trying to tell

6      you, this man has told me I have no say-so on what he files.

7      I have no say-so of what he chooses to say as far as my

8      trial defense goes, out of his own mouth.  Am I lying?

9              **THE COURT:**  Let's not --

10             **THE DEFENDANT:**  He's saying no.

11             **THE COURT:**  -- I don't want to hear the

12     answer.

13             **THE DEFENDANT:**  He knows what he said.  He

14     knows what he said.  So I don't understand.  I'll take a new

15     lawyer today and I would just fill him in and we can still

16     go on with trial on Monday.  The party needs to be broken

17     up.

18             **THE COURT:**  All right.  Your objection is

19     noted.  I want to hear what Dr. Rosmarin has to say and I

20     may or may not --

21             **THE DEFENDANT:**  But it doesn't have to be

22     about me.  His training and experience but him talking about

23     me is irrelevant.  I objected.

24             **THE COURT:**  All right.

25             **THE DEFENDANT:**  I have no -- he is not here

1     upon my request.

2                    **THE COURT:**  All right.  I have noted your

3     objection and I am going to hear it and I am going to ask

4     you to refrain from speaking while we hear the testimony.

5     BY MR. GOLD

6     **Q.**  Dr. Rosmarin, when I contacted you about Dr. Belin

7     (sic), what was -- Mr. Belin, what was the scope of the

8     engagement that I -- the scope of the problem I described to

9     you?

10    **A.**  You described to me a series of interactions with him

11    whereby he expressed suspicion bordering on paranoia that

12    you were working against his best interest.

13    **Q.**  And did I engage you to assist us in the case?

14    **A.**  Yes.

15    **Q.**  And after our court conference this morning, did you

16    have the opportunity to continue a meeting with Mr. Belin

17    earlier in the morning?

18    **A.**  Yes.

19    **Q.**  And can you describe to the Court what you did.

20    **A.**  Well, I initially gave him informed consent with regard

21    to the reasons for the meeting and the basis for the

22    meeting.

23                    **THE COURT:**  I am sorry, that was this morning?

24                    **THE WITNESS:**  Yes, Your Honor.

25         And then I asked him if I could ask him some basic

1    questions about his background and who he was and where he

2    came from rather than launching into a discussion about his

3    relationship with you.

4          He was only willing to tell me extremely limited

5    information, two or three factoids about that he's, you

6    know, he's lived locally.  He would not describe his family.

7    He would not describe whether he had any psychiatric issues.

8    He would only say that he is on no medications, has had no

9    more than minor surgery for a hernia.  I was not entitled to

10   ask about family psychiatric history.  I was not allowed to

11   ask him about any upbringing or education or anything

12   personal about him.

13         And he was rather insistent that we move on to the

14   legal issues with regard to his distrust of you, Mr. Gold.

15   BY MR. GOLD

16   **Q.**  And when you said you were not allowed to, you attempted

17   to make inquiries, is that what you mean?

18   **A.**  Yes, and to tell him that I needed to understand him as

19   a whole person and understand what may be -- that this was

20   standard, this was a standard medical and psychiatric

21   evaluation is to ask about, you know, his development, his

22   education, standard family matters, so I could understand

23   the full bio, psychosocial setting of his life given his

24   situation at this time.

25         And his -- I witnessed him trying to, you know,

1  object to your presence when you were first introducing me

2  before the hearing this morning.

3  **Q.**   And so when Mr. Belin wanted to proceed to the legal

4  issues, is that what you did?

5  **A.**   Yes.

6  **Q.**   When you were in the, as a forensic psychiatrist, when

7  you're in this type of situation, how do you conduct,

8  typically how do you conduct an evaluation in these

9  circumstances?

10 **A.**   Well, typically I do hear the concerns that the Court or

11 the attorney raises with me.  And then I almost always go

12 straight to examining the person in a longitudinal fashion,

13 getting a genetic background, a personal background, talking

14 about non-charged events to understand what's going on with

15 the person and their development and whether they have

16 medical or psychiatric issues.

17        And then I proceed to more specifics with regard

18 to, that would be more pertinent to the *Dusky* standard.

19 **Q.**   And the *Dusky* standard for the benefit of the Court is,

20 your understanding --

21 **A.**   Well, I'll try not to mangle it; but whether he has

22 sufficient present ability to confer with his attorney in a

23 rational fashion, whether he has rational and factual

24 understanding of the charges against him.

25 **Q.**   Now, during the course of your meeting with Mr. Belin,

1    did you develop a clinical opinion?

2    **A.**   I did.

3    **Q.**   And what was that?

4    **A.**   That --

5                    **THE DEFENDANT:**   I object.

6                    **THE COURT:**   Just give the opinion, not the

7    basis.

8                    **THE DEFENDANT:**   I object.

9                    **THE COURT:**   Overruled.

10   **A.**   That Mr. Belin has a delusion by which I mean a firm,

11   fixed, unarguable and not fully reality-based paranoid

12   belief that you are in cahoots with the U.S. Attorney for

13   uncertain benefits to you and trying to sell Mr. Belin "down

14   the river."

15                   **THE COURT:**   Let's pause there for a moment.

16        Is it possible to get into the basis for that,

17   Mr. Gold, without getting into issues of defense strategy,

18   privilege, work product and so on?  In other words, the next

19   question normally would be, "What is the basis for that

20   opinion," I assume.

21                   **MR. GOLD:**   Your Honor, I think there are some

22   data points, if you will, that I could address one by one if

23   you allow me --

24                   **THE COURT:**   Why don't you do that.  And,

25   again, let's tread cautiously and we will send Mr. Wortmann

1    out of the room if we need to but let's take it a step at a

2    time.

3                    **THE WITNESS:**  And, Your Honor, I can try to

4    speak carefully.

5                    **THE COURT:**  Yes.  Thank you.

6    BY MR. GOLD

7    **Q.**  Was there -- did you discuss with Mr. Belin his

8    conception about the filing of legal documents by the

9    defense in the case?

10   **A.**  I did.

11   **Q.**  And did Mr. Belin express a belief that the legal

12   documents that he had received were not the ones that we

13   had, in fact, filed?

14   **A.**  Correct.  He indicated that the documents that you

15   provided him were not the same ones you provided for the

16   Court with regard to some of the legal argumentations you

17   had provided to the Court.

18   **Q.**  And how did you -- did you interrogate or ask Mr. Belin

19   about that particular belief?

20   **A.**  Yes.

21   **Q.**  And what was your -- was your belief after questioning

22   him about it that it was genuine?

23   **A.**  It was genuine, it appeared genuine and firmly held

24   while he vociferously protested that it or other examples of

25   our conversations were evidence that he had what I told him

1    was my diagnosis of a paranoid delusion.

2                    **THE DEFENDANT:**  Whoa.

3    BY MR. GOLD

4    **Q.**  And so, just to look back, this was one belief held by

5    Mr. Belin that contributed to your clinical opinion?

6    **A.**  Correct.

7    **Q.**  Were there other beliefs espoused by Mr. Belin that

8    contributed to your clinical opinion?

9    **A.**  Yes.

10   **Q.**  Is the -- did you discuss with --

11                   **MR. GOLD:**  Your Honor, I am just thinking,

12   trying to think through a Scylla and Charybdis with my

13   question.

14                   **MR. WORTMANN:**  Your Honor, why don't I make it

15   easy and leave.

16                   **THE COURT:**  Okay.  Before you do, let me ask

17   just a couple questions.

18        You met with him for about an hour and a half

19   total; is that right?

20                   **THE WITNESS:**  Yes.

21                   **THE COURT:**  And is there -- I know you don't

22   have much time but is there a test or ability to -- I guess

23   what I am driving at is a test for malingering.  This is

24   something that is new to me, let's put it that way.

25                   **THE WITNESS:**  Certainly, Your Honor.  There

1      are certain indicia of non-malingering.

2              One, the insistent protestation that, and absolute

3      rejection that he has any mental illness.

4              Two, his body language when I was first introduced

5      to him towards Mr. Gold, which was sullen and angry.

6              Secondly, the -- thirdly, the various, not only the

7      content of his statements but the form.  So when I say

8      "content," he had paranoid constructs but the form of his

9      thinking, so-called formal thought disorder, meaning that

10     some of the logic of what he was saying was not logical.

11             So oftentimes malingerers will malinger psychotic

12     content but their form of their thinking, the logical way in

13     which they think is preserved and he had problems in both of

14     those areas.

15             Another support for non-malingering is that his

16     secondary gain, as I understand it in this case, is not to

17     evade trial, in fact, it is quite the opposite, but rather

18     to avoid having representation by Mr. Gold.  He rather

19     avidly wants to have a trial and, in fact, in my opinion he

20     has an unrealistic belief that he will be exonerated based

21     on constitutional matters, almost in a matter, almost by

22     deus ex machina via a jury nullification or intervention by

23     the First Circuit Court of Appeals in rather short order.

24             **THE COURT:**  All right.  Mr. Wortmann, why

25     don't you step out momentarily and we will make, we will

1    proceed ex parte and with a sealed transcript from this

2    point forward.

3                **MR. WORTMANN:**  Your Honor, would it be all

4    right if I run up to my office to pick up some papers for my

5    next hearing?

6                **THE COURT:**  Yes.

7                **MR. WORTMANN:**  Okay.  Thank you.

8          (Whereupon, Mr. Wortmann exited the courtroom at

9    1:45 p.m.)

10         (Whereupon, a portion of the proceedings were

11   sealed and transcribed under separate cover.)

12               **THE COURT:**  All right.  Mr. Wortmann is back

13   in the courtroom so we will be back on the record or rather

14   it is no longer ex parte and this transcript, part of the

15   transcript will not be sealed.

16         Mr. Wortmann, basically what we did is we heard

17   some more information from Dr. Rosmarin.  Mr. Gold raised

18   some additional issues with me.  Mr. Belin had some dialogue

19   with me.

20         What I proposed to do is to recess until tomorrow

21   which would give me a chance to think about this, look at

22   some case law, let it percolate a little bit and think about

23   what I want to do.

24         Mr. Belin has indicated he does not want to go pro

25   se with anyone as standby counsel.  He wants a new lawyer.

1    I think, to state the obvious, if he does get a new lawyer,

2    we won't be going to trial on Monday.

3                    **MR. WORTMANN:**  That's clear.

4                    **THE COURT:**  I don't know how long the delay

5    would be if we did that but I want to think carefully about

6    what I do here and so I would propose that we reconvene

7    tomorrow.

8              (Whereupon, the Court and the Clerk conferred.)

9                    **THE COURT:**  Either nine a.m. or 10:30.

10                   **MR. WORTMANN:**  Nine a.m. would be great, Your

11   Honor, if it works for you.

12                   **MR. GOLD:**  That's fine.

13                   **THE COURT:**  Nine a.m.

14                   **MR. WORTMANN:**  Does the marshal have any

15   concern that he would be here by then?

16                   **THE MARSHAL:**  No, sir.  We're here at nine

17   a.m.

18                   **MR. WORTMANN:**  Well, the transport --

19                   **THE COURT:**  All right.  Let's reconvene

20   tomorrow at nine a.m.

21         If either of you or both of you want to file

22   anything in writing or even an email with some cases

23   attached, it might help point me in some direction and I

24   would be happy to accept that.

25                   **MR. WORTMANN:**  I am a little bit blind but,

1    you know, Your Honor, the standards for, at least the

2    standards for competency are fairly well set forth.

3              THE COURT:  Again, I don't see this is a 4241

4    situation is he competent to stand trial.  I mean, at least

5    as far as his mental health issue is concerned, as framed by

6    Dr. Rosmarin, I don't have any other information, it is

7    basically described as a focused, I mean, accepting, because

8    that is not a diagnosis, the description, I am accepting the

9    description at face value as a delusion or paranoia focused

10   on Mr. Gold.

11             MR. WORTMANN:  So to make things clear, Your

12   Honor, no one in this courtroom, including the doctor, is

13   recommending that there is a general competency issue or

14   recommending that a competency hearing be held?

15             THE COURT:  That's my understanding at this

16   point.  Do you agree?  And I know you only have a limited

17   amount of information but that's -- do you agree with that?

18             THE WITNESS:  If I can just say, Your Honor --

19             THE COURT:  Yes.

20             THE WITNESS:  -- my opinion is that he is not

21   able to work with Mr. Gold in a rational fashion.

22             It is my further opinion that he may be able to

23   work with another attorney.

24             It is my further opinion that this would be more

25   likely to be successful than, for example, antipsychotic

1    medication.

2           And it is my opinion that he does not have the

3    capacity with regard to his ability to work with Mr. Gold

4    and his paranoid delusion about Mr. Gold, that is often

5    associated with judicial findings of competency to stand

6    trial.

7           **THE COURT:**  All right.  At least, other than

8    what you described, we don't have any additional information

9    concerning his competency to stand trial?

10          **THE WITNESS:**  Well, Your Honor, I did describe

11   his rather magical beliefs that he is not in full legal

12   jeopardy with regard to the length of incarceration and as I

13   described, sort of deus ex machina intervention and sort of

14   magical thinking but not fully delusional.

15          And I used "magical thinking" in the clinical term

16   where it means somewhere between unrealistic and, frankly,

17   psychotic.

18          **THE COURT:**  Okay.

19          **THE WITNESS:**  I think he is psychotic with

20   regard to Mr. Gold.

21          **THE COURT:**  All right.  So at least one of the

22   options on the table then -- and I am not saying I am going

23   to do this -- but one of the options on the table is a

24   competency proceeding under 4241.  That is at least one of

25   the choices here.

1                      **MR. WORTMANN:**  Right.

2                      **THE COURT:**  And I am sorry if I misspoke,

3      Dr. Rosmarin.

4                      **THE DEFENDANT:**  Your Honor, I've got a

5      question.

6                      **THE COURT:**  Yes.

7                      **THE DEFENDANT:**  What does being psychotic

8      towards Mr. Gold mean?  Because I don't know what that

9      means.

10                     **THE COURT:**  Well, I am going to let the

11     testimony stand for itself rather than try to explain it.

12                     **THE DEFENDANT:**  You're allowing it.

13                     **THE COURT:**  I am allowing it?

14                     **THE DEFENDANT:**  Yeah, you're allowing the

15     testimony.

16                     **THE COURT:**  Well, I am allowing the testimony.

17     It is helpful to you in the sense, Mr. Belin, that it may

18     achieve your desired goal of changing counsel, which I

19     probably otherwise would simply deny.  But I am going to

20     think about this, think about the testimony, what my options

21     are and we will reconvene tomorrow morning at nine a.m. and

22     talk about where we go from here.

23                     **MR. WORTMANN:**  Thank you, Your Honor.

24                     **MR. GOLD:**  Thank you, Judge.

25                     **THE COURT:**  All right.  Thank you.

1

2          (WHEREUPON, the proceedings were recessed at 2:20

3      p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


        I, Carol Lynn Scott, Official Court Reporter for

the United States District Court for the District of

Massachusetts, do hereby certify that the foregoing pages

are a true and accurate transcription of my shorthand notes

taken in the aforementioned matter to the best of my skill

and ability.



                /S/CAROL LYNN SCOTT


        _____

                    CAROL LYNN SCOTT
                 Official Court Reporter
                John J. Moakley Courthouse
              1 Courthouse Way, Suite 7204
               Boston, Massachusetts 02210
                     (617) 330-1377



**DATE: June 30, 2014**