**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Dkt. No. 0101 1:13CR10048-1** |
| | ) | |
| **KING BELIN** | ) | |

### DEFENDANT KING BELIN'S MOTION FOR A NON-GUIDELINES SENTENCE UNDER *BOOKER* AND SENTENCING MEMORANDUM

Pursuant to FRCrP 32 and the Court's Procedural Order of January 8, 2015, defendant King Belin, through counsel, files this **Motion for a Non-Guidelines Sentence under *Booker*** and offers this memorandum in support thereof.

### Summary

The probation officer has completed a Presentence Investigation Report (PSR) in which she recommends an advisory guideline range (AGR) of 235 to 293 months.[1]  For sentencing purposes, the defendant does not contest this recommended finding.  The defendant notes that the government has filed a sentencing memorandum in which it seeks, for reasons contained therein, a sentence of imprisonment of 192 months.  The defendant appreciates the government's willingness to recommend a sentence substantially below the AGR, implicitly recognizing that a non-Guidelines sentence under *Booker* is well justified.  The defendant believes, however, that when the Court fully takes into account certain factors surrounding the armed career criminal (ACC) finding, together with the deeply dysfunctional upbringing the defendant experienced, the Court will conclude that a sentence of 180 months' imprisonment[2] would be sufficient, but not greater than necessary, to accomplish the four purposes of sentencing found in 18 U.S.C. § 3553(a)(2)(A-D).  Accordingly, the defendant urges the Court to impose such a sentence of imprisonment with appropriate judicial recommendations to the Bureau of Prisons, followed by a term of supervised release of five years, including special conditions for mental health and substance abuse treatment and any other conditions the Court deems just and appropriate.

---

[1] PSR, ¶ 80.
[2] The minimum mandatory sentence for an ACC is 15 years, or 180 months, imprisonment.

## The ACC Finding

The defendant wishes to herein incorporate by reference the two "comments" he made to the probation officer in his written objections to the PSR.  By way of summary, the first comment traces the evolution of this case from an Indictment on a charge carrying a ten-year maximum sentence on which he was found guilty by jury verdict; through the recommended finding that, due to his prior criminal history, he is an ACC which increased the penalty to a minimum mandatory 15 years to life; and, to the recommended AGR in the PSR of 235 to 293 months.  While *Alleyne*[3] stands for the proposition that any fact requiring the imposition of a minimum mandatory sentence must be proven beyond a reasonable doubt, *Almendarez-Torres* [4] still stands in its ruling that prior criminal convictions are sentencing factors which can be found by a preponderance of the evidence.  This state of affairs, in which one's original imprisonment exposure can be so markedly increased on the basis of prior convictions found by a preponderance standard, offends fundamental notions of fairness.

The second comment addresses the issue of Massachusetts Resisting Arrest convictions standing as predicate convictions for the ACC finding.  In a great majority of jurisdictions in the country, Resisting Arrest is considered a traditional misdemeanor, *i.e.,* punishable by up to a year in prison.  Massachusetts is an outlier in this regard in that the maximum penalty is two and one-half years imprisonment.  This fact, together with the other required elements of such offenses, render Resisting Arrest convictions in Massachusetts "violent felonies" and, therefore, predicates for an ACC finding.  This is so despite the fact that the Guidelines since inception have considered Resisting Arrest a minor offense never countable unless a sentence of more than one year's probation or at least 30 days' imprisonment is imposed.[5]  In the instant matter, it just so happens that of the four convictions cited as predicate convictions for the ACC finding by the probation officer, three are for Resisting Arrest in Massachusetts.

The point is that, while the defendant stands as an ACC as the law now stands, the significantly increased sentencing exposure mandated by the ACC finding should rest on a higher standard of proof than is now the case.  Moreover, were the defendant in almost any other federal jurisdiction than Massachusetts, he would not be considered an ACC on the basis of his Resisting Arrest convictions.  His AGR in those jurisdictions would have been, as indicated by

---

[3] *Alleyne v. U.S.,* 133 S.Ct. 2151 (2013).
[4] *Almendarez-Torres v. U.S.,* 523 U.S. 224, 118 S.Ct. 1219, 140 .Ed. 2d 250 (1998).
[5] *See* U.S.S.G. § 4A1.2(c)(1) of the **1987 Federal Sentencing Guidelines Manual** which may be accessed at www.ussc.gov.

the government, 140 to 175 months, which would have been reduced to 120 months because of the statutory maximum for a violation of 18 U.S.C. § 922(g).

### History and Characteristics of the Defendant

The probation officer has done a reasonably accurate job of portraying the history and characteristics of the defendant in the PSR.  It is a portrait that is unfortunately all too common for many black males who grew up in poverty in the inner city.  Without providing unneeded detail, the following capture the essence of the defendant's upbringing and life:

- The defendant was raised in a broken home headed by his mother.  His father was incarcerated during portions of the defendant's youth.  His father did not play a meaningful role in the defendant's upbringing.  (PSR, § 54).

- Though the defendant did not experience or witness any forms of abuse in his youth, his family experienced financial hardships and was reliant on public assistance.  (PSR, ¶ 54).

- The defendant began using abusing alcohol and marijuana at age 15, his use of the latter becoming daily over time.  At the time of his instant arrest, he was consuming a pint of liquor daily.  (PSR, ¶ 72).

- The defendant started having behavioral difficulties in the seventh grade and was subsequently placed in special education classes, "likely due to disruptive behaviors rather than learning disabilities."  He is a 10th grade dropout.  (PSR, ¶ 74).

- Concerning mental and emotional health, the defendant first participated in counseling at age 11, evidently for behavioral problems at school.  The 2014 Forensic Repot referenced in the PSR, resulted in a diagnosis of Antisocial Personality Disorder and Paranoid Personality Disorder.  (PSR, ¶ 70).

- The defendant was first committed to Massachusetts Department of Youth Services (DYS) custody at age 15.  He skipped school often and spent much of his time on the "streets" and, as a result, was in and out of DYS custody until age 18.  (PSR, ¶ 55).  Though the defendant denies being a member of the Norfolk Street Bulls, a street gang, he acknowledges having friends in that neighborhood.  (PSR, ¶ 56).  In 2012, the defendant suffered a gunshot wound to his knee in an incident in which the defendant claims the bullet was intended to kill him.  (PSR, ¶ 68).

- The defendant has not married and has had two children by two different women.  His relationships with these women are described as "contentious" and "triangulated."  (PSR, ¶¶ 63 – 66).

- The defendant's adulthood has been marred by repeated encounters with the criminal justice system.  (*See* PSR, ¶¶ 34 – 52.)  He has served a series of custodial sentences which have also included revocations of probation.  When one reviews that history, one notes an Assault and Battery on a Police Officer together with various weapons-related charges as the most serious.  Otherwise, the clear majority of the charges were for lesser charges of Resisting Arrest, Possession of Drugs, and a series of motor vehicle offenses, including two OUI matters.  Notably absent from that record, however, are the more serious violent felonies normally associated with ACCs, *i.e.,* Aggravated Assault, Robbery, and Burglary.

Clearly, the foregoing establishes that the defendant has had little chance from the beginning of his life to lead a law-abiding lifestyle.  The dysfunction of his youth has led inexorably to the dysfunction of his adulthood, the instant matter, and the unfortunate prospect of his spending much of the next fifteen years in prison.

### Analysis in Light of 18 U.S.C. § 3553(a)(2)(A-D) Sentencing Purposes

Before imposing sentence, the Court is obligated to address the sentencing purposes recounted in 18 U.S.C. § 3553(a)(2)(A-D).  An analysis of this case in light of those purposes follows.

*(A)  To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

The seriousness of the offense is clearly reflected in its minimum mandatory penalty of 15 years to life imprisonment and the AGR of 235 to 293 months.  This having been said, it needs to nonetheless be recognized that the predicate convictions for the ACC finding are not the serious violent felonies normally associated with ACCs.  In this case, those predicates are A&B on a Police Officer and three Resisting Arrest convictions, none of the latter of which would stand as predicates in most federal jurisdictions in this country.  For this primary reason, the minimum mandatory penalty should be imposed.

*(B)  To afford adequate deterrence to criminal conduct.*

Certainly, a 15-year term of imprisonment will deter others from so conducting themselves.  The defendant, himself, will also be deterred, if only to avoid similar consequences for his actions.

*(C)  To protect the public from further crimes of the defendant.*

The public will be protected during the defendant's long term of imprisonment.  When released to the community, the defendant will likely be under the close supervision of the U.S. Probation Office for five years.  Well-crafted special conditions should enhance the public's protection during that time.

*(D)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

The defendant is in clear need of substance abuse, mental health, educational, and vocational programs while in prison and under community supervision.  Successful implementation of these will enhance the defendant's future as well as the safety of the community.

### Conclusion and Recommendation

For all of the reasons herein advanced, the defendant believes that a 15-year, or 180-month, term of imprisonment would be a just sentence in this case.  Such a sentence would represent and require a non-Guidelines sentence under *Booker*, which the defendant urges the Court to do.  The defendant submits that such a sentence would be one which is "sufficient, but not greater than necessary" to accomplish the four purposes of sentencing discussed above.  Accordingly, the defendant urges the Court to impose the following sentence:

- Imprisonment for a term of 180 months.
- Judicial recommendation to the Bureau of Prisons for participation in the 500-hour substance abuse treatment program, as well as such mental health, educational, and vocational programs as are available.
- A term of supervised release of five years, including special conditions for substance abuse testing and treatment, mental health treatment, and educational/ vocational rehabilitation.
- A special assessment of $100.

Respectfully submitted,

King Belin
By his attorney,


_____/s/____Paul J. Garrity_____
Paul J. Garrity
14 Londonderry Road
Londonderry, NH 03053
603-434-4106
garritylaw@myfairpoint.net


**Dated:**          April 23, 2015


## CERTIFICATE OF SERVICE

I, Paul J. Garrity, hereby certify that on this 23rd day of April, 2015 a copy of the within Motion for a Non-Guidelines Sentence under Booker and Sentencing Memorandum has been efiled to all parties on record and mailed, postage prepaid to King Belin.


___/s/____Paul J. Garrity_____