UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )
                                   )
                                   )  No. 13-10048-FDS
vs.                                )
                                   )
KING BELIN,                        )
                    Defendant.     )


BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV


FINAL PRETRIAL CONFERENCE



John Joseph Moakley United States Courthouse
Courtroom No. 2
One Courthouse Way
Boston, MA 02210


December 11, 2014
3:57 p.m.






Valerie A. O'Hara
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 3204
Boston, MA 02210
E-mail: vaohara@gmail.com

1    APPEARANCES:

2    For The United States:

3         United States Attorney's Office, by JOHN A. WORTMANN, JR.,
     ESQ., 1 Courthouse Way, Suite 9200, Boston, Massachusetts
4    02110;

5    For the Defendant:

6         PAUL J. GARRITY, ESQ., 14 Londonderry Road,
     Londonderry, New Hampshire 03053.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>PROCEEDINGS</u>

1

2          THE CLERK:  All rise.  Thank you.  Please be seated.

3     Court is now in session in the matter of United States vs.

4     King Belin, Criminal Matter Number 13-10048.

5          Counsel, can you identify yourself for the record.

6          MR. WORTMANN:  Your Honor, good afternoon,

7     John Wortmann for the United States.

8          MR. GARRITY:  Paul Garrity for King Belin, good

9     afternoon.

03:59PM 10          THE COURT:  And the defendant is present.  This is the

11     final pretrial conference in this case.  The first matter I

12     want to take up is Mr. Garrity's motion to withdraw.  What I

13     propose to do is take this a step at a time and hear

14     Mr. Garrity on that first and then take it from there, I guess.

15     What probably makes sense is to clear the courtroom.

16          MR. WORTMANN:  Yes.

17          THE COURT:  That's right, Mr. Wortmann, and I'll

18     designate this portion of the transcript as sealed pending

19     further Court Order.

03:59PM 20          (PROCEEDINGS HELD UNDER SEAL; SEALED TRANSCRIPT WAS

21     CONCLUDED)

22          THE COURT:  All right.  This portion of the transcript

23     is not sealed going forward.  Let the record reflect that

24     Mr. Wortmann is back in the courtroom.  While we were out, I

25     heard from both Mr. Garrity and Mr. Belin about Mr. Garrity's

1    motion to withdraw, and I indicated that I was not going to

2    permit Mr. Garrity to withdraw at this time, that I intended to

3    give the defendant *Faretta* warnings and that I'm going to

4    direct Mr. Belin and Mr. Garrity to attempt to work out their

5    differences, and I've indicated to Mr. Belin that unless

6    there's a substantial change in circumstances that's hard for

7    me to foresee, I'm not going to permit Mr. Garrity to withdraw

8    in favor of a fourth lawyer, that Mr. Belin would essentially

9    have to represent himself if he and Mr. Garrity cannot work

04:10PM 10    together sufficient for him to put on a defense and that I

11    would reconvene in about a week or so given how close we are to

12    trial and kind of see where matters stand.  Mr. Wortmann, do

13    you want to respond to that?

14         MR. WORTMANN:  No, your Honor.  If we get to the point

15    where it looks like there's a possibility that the trial may

16    get put over, I would like to be heard at that point, but I

17    think it would be premature.

18         THE COURT:  All right.  At this point, I'm not doing

19    that, and, again, I think we're scheduled to impanel on

04:11PM 20    December 22nd in order to avoid the impanelment issues of

21    impaneling the same time as Tsarnaev, and we'll start trial on

22    Monday, January 5th.

23         MR. WORTMANN:  Your Honor, if I could ask the Court to

24    do one thing, and that is to give Mr. Belin encouragement to

25    stipulate as to the felony conviction.  I think it's important

1   that he hears from the Court of the dangers of not agreeing to

2   the stipulation where we stand ready, willing and able to

3   stipulate.  I'd rather much stipulate than not stipulate, and I

4   think it may be just something it's just appropriate for the

5   record that he hear it from you.

6          THE COURT:  All right.  I think that's fair.

7   Mr. Belin, as you know, you're charged in a one-count

8   indictment with possession of a firearm and ammunition, I

9   believe, is that right?

04:12PM 10          MR. WORTMANN:  Correct, your Honor.

11          THE COURT:  Firearm and ammunition after having been

12   convicted for a felony, and it's not charged as a violent crime

13   or prior drug offense, just a straight felony, is that right?

14          MR. WORTMANN:  Just a just straight felon in

15   possession.

16          THE COURT:  One of the things the government has to

17   prove, Mr. Belin, is that you were previously convicted of a

18   felony, as you know.  The normal course in cases such as this

19   is for the defense to stipulate that, that means to agree, that

04:13PM 20   you have a prior felony conviction.

21          The reason you do that is to keep the details of that

22   felony conviction away from the jury because I'm going to

23   instruct the jury if a copy of your previous conviction comes

24   in that they're not to consider it for the wrong purpose, for

25   example, to consider that you're a bad person or have a bad

1    character or so on, but there's always a danger that the jury

2    won't be able to see past that, that they'll ignore my

3    instructions.

4         So to use an extreme example, suppose you had a prior

5    conviction for attempted murder, I know you don't, but suppose

6    you did have a prior conviction for attempted murder, if the

7    jury heard that, they would think this is a terrible person, we

8    need to get him off the streets, and that wouldn't be fair

9    because that's not how the case should be decided.

04:13PM 10    So the normal practice, the strongly preferred

11   practice, is to just agree that you have a conviction, no

12   details come out about that, I give the jury the warning

13   anyway, and we try the case based on whether or not you

14   possessed a firearm and ammunition.

15        I understand that you're not willing to stipulate or

16   agree to anything.  You do have that right.  I do think this is

17   a bad idea.  It's not the way these cases are normally

18   defended.  I've been at this as either a prosecutor or a

19   defense attorney or a Judge for 30 plus years, and I don't

04:14PM 20   think I've ever seen anyone fail to stipulate to a conviction

21   in a case like this.

22        So I strongly encourage you to make that stipulation

23   to agree that you have a felony conviction.  I think you're

24   taking a chance that you don't need to take, and I'm not your

25   lawyer, I'm not giving you legal advice, but I do think it's

1  appropriate for you to hear from me that I think that's a bad

2  idea going forward.

3       All right.  Let me next, actually, Mr. Belin, I'm

4  going to ask you to take the stand and I'm going to put you

5  under oath because I have to ask you some questions.  Okay.

6  You may join him up there, Mr. Garrity.

7       (Defendant was sworn)

8       THE COURT:  All right.  Mr. Belin, you have a right

9  under the United States Constitution to counsel, to a lawyer to

04:15PM 10  represent you in this case, and we have appointed a lawyer to

11  represent you.  He's the third court appointed lawyer,

12  Paul Garrity.

13       You also have the right to represent yourself, if you

14  so choose, and normally waiving the right to counsel has to be

15  knowing and voluntary, but it is possible to waive counsel

16  through conduct, through your own actions, and one of the ways

17  in which you can do that is by refusing to cooperate with your

18  lawyer or putting your lawyer in a position where the lawyer

19  feels an obligation to withdraw.

04:16PM 20       As you know, I had originally or the Court had

21  originally appointed Ian Gold to represent you.  You had a

22  conflict with Mr. Gold, he withdrew, we appointed

23  Raymond O'Hara, he had a conflict with you, he withdrew, and

24  we've appointed Mr. Garrity.

25       I'm giving you an opportunity, a final opportunity to

1   cooperate with Mr. Garrity, but this may be your final chance.

2   If counsel moves to withdraw again because he feels that you

3   have an irreconcilable conflict and that you can't work

4   together and I decide to grant that motion, you're going to be

5   forced to represent yourself.

6           Do you understand that?

7           THE DEFENDANT:  What about my Sixth Amendment?

8           THE COURT:  Well, you do have a Sixth Amendment right

9   to a lawyer, again, but you can waive that if you're not

04:17PM 10   cooperating with your lawyer, if you're putting your lawyer in

11   a difficult position, at some point you can waive it, and I'm

12   warning you that you're close to waiving it if you don't

13   cooperate with Mr. Garrity.  Do you understand that?

14          THE DEFENDANT:  I don't want to cooperate with any

15   lawyer that is trying to get me to say or to let him or her say

16   that something was planted on me, the firearm was planted on me

17   or maybe I didn't know I had the firearm on me, I'm never going

18   to cooperate with that, that's not what happened, that's not

19   what I want my trial defense "strategy" to be.

04:18PM 20          THE COURT:  Okay.  Whether or not that's true, do you

21   understand that you could be forced to represent yourself if I

22   decide that you're not properly cooperating with your counsel,

23   do you understand that?

24          THE DEFENDANT:  Can you define "cooperating with my

25   counsel" before I answer that question?

1          THE COURT:  Well, I'll do my best, I guess, to answer

2     that question.  You do have a right to make certain decisions,

3     for example, whether to plead guilty, whether to testify.  You

4     do have a right in general terms to direct your defense.  I

5     think my understanding is you have a right to indicate to

6     counsel that you don't want counsel to pursue a particular

7     defense if that's reasonable under the circumstances, but you

8     can't simply not cooperate with him either.  You can't refuse

9     to meet with him, refuse to work with him on your defense.  Do

04:19PM 10     you understand that?

11          THE DEFENDANT:  Refuse to meet with him?

12          THE COURT:  To meet with him and to discuss with him

13     and to help him prepare for trial?

14          THE DEFENDANT:  I'd love that, I'd love that, I'd like

15     that, but, I mean, as far as the trial defense "strategy," as

16     far as consisting of the gun being planted on me or maybe I

17     didn't know that the gun was on me, I'm never going to

18     cooperate with that.

19          THE COURT:  Putting that aside, are you willing to

04:19PM 20     cooperate with your lawyer otherwise?

21          THE DEFENDANT:  Otherwise, yes.

22          THE COURT:  And, again, I want to make sure you

23     understand, I'm not making a decision now that you're not

24     cooperating, I'm just giving you warnings, okay, that's all,

25     and do you understand that if I decide that you're not

1    cooperating properly, I'm not making that finding, but if I did

2    decide that, that you're not going to get a new lawyer, do you

3    understand that?

4         THE DEFENDANT:  What would make you come to that

5    decision?

6         THE COURT:  We'll have to wait and see where we are.

7    I'm going to bring you back in in another week, I want you and

8    Mr. Garrity to sit down and talk about this, try to work this

9    through, and we'll see where we are in about a week.

04:20PM 10         THE DEFENDANT:  You know where I stand with this?

11         THE COURT:  I think I do.  Again, I can't get into all

12   the details of it because it's privileged, but I think I

13   understand your position, okay.

14         So let me just ask you one more time.  I just want to

15   create a record.  You understand that if I do decide that

16   you're not properly cooperating with your lawyer, that you

17   won't be appointed a new lawyer, do you understand that?

18         THE DEFENDANT:  I understand.

19         THE COURT:  Okay.  Let me go through some other

04:20PM 20   questions here that I'm obliged to ask you.  Have you ever

21   studied law, Mr. Belin?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Have you studied law in law school or just

24   on your own?

25         THE DEFENDANT:  Just on my own.

1          THE COURT:  Have you ever represented yourself in a

2     criminal action?

3          THE DEFENDANT:  No.

4          THE COURT:  Okay.  Do you understand that you're

5     charged with possessing a firearm and ammunition after having

6     been previously been convicted of a felony?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand that if you're found

9     guilty of that crime, I could sentence you to up to 10 years in

04:21PM 10     prison as well as a term of supervised release, a fine?

11          MR. WORTMANN:  Your Honor, he does qualify as an armed

12     career criminal, therefore, the mandatory minimum sentence is

13     15 years up to life.

14          THE COURT:  Is it a mandatory minimum of 15?

15          MR. WORTMANN:  Yes.

16          THE COURT:  All right.  I'm sorry, Mr. Belin, do you

17     understand that you're facing a mandatory minimum sentence of

18     15 years in prison and a possible maximum sentence of life?

19          THE DEFENDANT:  Yes.

04:21PM 20          THE COURT:  Do you understand that in addition to

21     that, I can impose a term of supervised release, a fine, and

22     I'll be required to impose a $100 special assessment if you're

23     convicted?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And you also understand that there are

1    sentencing guidelines that may have an effect on your sentence

2    if you're found guilty?

3               THE DEFENDANT:  Yes.

4               THE COURT:  Do you understand that if you do wind up

5    representing yourself, that you're on your own, that I cannot

6    tell you or even advise you how you should try your case?

7               THE DEFENDANT:  Yes.

8               THE COURT:  Are you familiar with the Federal Rules of

9    Evidence?

04:22PM 10          THE DEFENDANT:  Some of them.

11              THE COURT:  All right.  Do you understand that the

12   Rules of Evidence govern what evidence may or may not be

13   introduced at trial, and that if you represent yourself, you'll

14   have to abide by those very technical rules?

15              THE DEFENDANT:  Yes.

16              THE COURT:  In other words, they're not going to be

17   relaxed for your benefit, you'll have to follow those rules; do

18   you understand that?

19              THE DEFENDANT:  Yes.

04:22PM 20          THE COURT:  Are you familiar with the Federal Rules of

21   Criminal Procedure?

22              THE DEFENDANT:  I've skimmed across some of them.

23              THE COURT:  All right.  Do you understand that those

24   rules govern the way that a criminal action is tried in federal

25   court, and that you'll have to abide by those rules, and those

1   rules won't be relaxed for your benefit either; do you

2   understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  Mr. Belin, in my opinion, a

5   trained lawyer would defend you far better than you could

6   defend yourself.  It's unwise of you to represent yourself

7   despite your experience.  You're not sufficiently familiar with

8   the law or with court procedure or the rules of evidence to

9   properly represent yourself, and I strongly urge you to

04:23PM 10   cooperate with your lawyer going forward and to not try to

11   represent yourself.

12          I'm going to stop there.  I'm going to also urge

13   Mr. Garrity to attempt to work with you and to find common

14   ground and to put on a defense as best you can under the

15   circumstances, and, again, if I conclude that, Mr. Belin, your

16   conduct has caused Mr. Garrity to need to withdraw, you'll be

17   forced to represent yourself, and you'll give up your right to

18   be represented by a lawyer.  Do you understand that?

19          THE DEFENDANT:  Yes.  I have a question.

04:24PM 20          THE COURT:  Yes, go ahead.

21          THE DEFENDANT:  Do you think that me not wanting to

22   use those trial defense strategies is not cooperating?

23          THE COURT:  Well, I'm not making that judgment at all,

24   and it's going to be difficult for me, but I do want -- that's

25   why I want you and Mr. Garrity to sit down and work it through.

 1    I would need more information before I would make that

 2    decision, but I just want to make sure you're warned.  Do you

 3    understand the consequences of this?  It's very important for

 4    you to work with him, as it's important for him to work with

 5    you, and I want you to be warned of the consequences in case

 6    you fail to do it, okay?  Do you understand that?

 7          THE DEFENDANT:  I'll work with him, I just don't want

 8    him to use those trial strategies.

 9          THE COURT:  All right.  What I propose to do is to

04:25PM 10    talk about the trial and how it's going to proceed as we would

11    in any pretrial conference and then to regroup in about a week

12    or so and see where we are.  Is there anything further on this

13    topic for now, Mr. Wortmann?

14          MR. WORTMANN:  I don't believe so.  Thank you, your

15    Honor.

16          THE COURT:  Mr. Garrity.

17          MR. GARRITY:  No, your Honor.

18          THE COURT:  Thank you.  Mr. Belin, you may step down

19    and resume your seat at the table.

04:26PM 20          All right.  Let me take up first the trial schedule.

21    Again, my plan is to impanel on December 22nd, to do nothing

22    but impanel that day and to give the jury some preliminary

23    instructions.  The jury will be told that the trial will begin

24    on January 5th, that it will be probably about three days or so

25    to try and that we're doing this unusual schedule because of

1    the holidays and because of the Tsarnaev trial so that they

2    aren't caught up in that.

3          I expect to impanel despite the short length of the

4    trial two alternates, so we would impanel 14 people, so the

5    government would have 7 peremptories and the defense 11.

6          The way I do my impanelment is as follows:  We will

7    bring in some number of people, let's say the number is 45.  I

8    will ask a series of questions to all 45 people, so, for

9    example, do you know the lawyers, do you know Mr. Belin, do you

04:27PM 10    have any familiarity with the case, do you know any of the

11    witnesses and so forth?

12          As people raise their hand yes, I'll bring them to the

13    sidebar one-by-one for additional follow-up, so, for example, I

14    ask a question to the effect, "Does anyone have any experience

15    or connection with law enforcement?"  There's always people who

16    raise their hands.  We'll bring them up to the sidebar and

17    explore that.

18          So you'll have people, you know, they're married to a

19    Brockton police officer, you know, whatever their connection,

04:28PM 20    we'll explore that, maybe I'll strike them, maybe I don't.  I

21    do permit discrete, polite, limited attorney voir dire to

22    follow up on my questions at sidebar.

23          Please ask before you do so, but sometimes the lawyers

24    want a little bit more information than I've asked, and I think

25    that's fine.  I do ask that your attorney voir dire be limited

1    to the subjects that we're exploring, so let's say someone who

2    has a prior criminal conviction, I might ask three or four

3    questions, and the lawyers might want a little more

4    information, you know, what court was it in, was it a jury

5    trial, that sort of thing.

6          Once I have struck whoever I'm going to strike for

7    cause, the next 14 people remaining on the list that you have

8    in front of you will be put into the jury box.  So, for

9    example, let's say you have a randomized list in front of you,

04:29PM 10    let's say I strike jurors Number 1 and 2 for cause, jurors

11    number 3 through 16 will be put in the box in order.

12          At that point I will ask some follow-up questions to

13    those 14 people.  Sometimes there's blanks or ambiguities on

14    the form.  I'll ask about that, and at that point I'll ask

15    about prior jury service.

16          We will then begin the process of exercising

17    peremptories.  We'll do that by rounds with parties going

18    one-by-one, so the government will go first in the first round,

19    Mr. Wortmann will exercise one peremptory challenge if he

04:29PM 20    chooses, then the defense will exercise one if he chooses, then

21    back to Mr. Wortmann for one and so on.

22          I do not permit backstrikes, by which I mean you have

23    one chance to challenge a juror, so if in the first round we

24    challenge 8 people and we replace those 8, the original 6 in

25    the box will be on the jury.

1          Obviously, the challenges will be done at sidebar.

2     Again, we do them by one-by-one, the defense will go first in

3     the second round, the government first in the third round and

4     so on.  When we have run out of challenges or both sides are

5     satisfied, the people who remain will constitute the jury.

6          The last two people seated will be the alternates, but

7     we won't tell them they're the alternates until the time comes

8     for them to deliberate, that way we'll make sure that everyone

9     is paying close attention.

04:30PM 10          I guess let me pause there.  Anything about the

11     impanelment process, Mr. Wortmann?

12          MR. WORTMANN:  One question, and this sounds silly,

13     could you tell me how you number the seats just so I can fill

14     out my diagram?

15          THE COURT:  Sure.  Closest -- we seem to be missing

16     some chairs here, but the closest one to see me is seat 1, so

17     it will be 1 through 7, and then behind 1 is 8 through 16.

18          MR. WORTMANN:  Thank you, your Honor.  Secondly, do

19     you also allow an additional challenge on the alternates?

04:31PM 20          THE COURT:  What I do unless counsel think this is

21     wrong or you have a different preference, ordinarily we would

22     impanel 12 and you'd have 6 and you'd have 10.  You're each

23     entitled to an additional challenge, so I make it 7 and 11.

24          MR. WORTMANN:  Yes.

25          THE COURT:  I don't do the challenges of the

1    alternates separately.  Again, if you think we need to do that,

2    I can do that, but I just lump them together.

3         MR. WORTMANN:  I think that's fine, your Honor.  I

4    apologize, your Honor, I didn't catch the 7 and 11 vs. 6-10.

5         THE COURT:  But just, again, bear in mind, the last

6    two people seated regardless of what seat they are in will be

7    the alternates, so they could be in seats 1 and 2.  So let's,

8    again, get back to my hypothetical.  I've struck jurors 1 and 2

9    for cause, we put 3 through 16 in the box in the first round,

04:32PM 10   the government strikes 3, you strike 4, the government strikes

11   5, you strike 6, and you both say that you have no further

12   strikes to make as to that panel, we remove 3, 4, 5 and 6,

13   replace them with 17, 18, 19 and 20.  In the next round, you

14   can only challenge 17, 18, 19 and 20.  Let's say that there are

15   no further challenges exercised, 19 and 20 regardless of where

16   they are sitting would be the two alternates.

17        In terms of the voir dire questions -- I'm sorry,

18   Mr. Garrity, did you have any question?

19        MR. GARRITY:  That was going to be my question, Judge.

04:32PM 20   I had submitted some proposed voir dire questions.

21        THE COURT:  Yes.  I was going to getting to that next.

22        MR. GARRITY:  With respect to race, I was going to ask

23   that you ask the jurors on an individual basis given the

24   sensitive nature of the questions how people may not be, I

25   guess, open to answering those questions candidly if they were

1    said in front of other people.

2          THE COURT:  So, in other words, you want me to ask

3    about the fact that the defendant is African-American and ask

4    about whether they have any particular bias?

5          MR. GARRITY:  Yes, your Honor, along the lines of the

6    questions I outlined in the proposed voir dire questions.

7          THE COURT:  All right.  Mr. Wortmann, do you have a

8    view on this?

9          MR. WORTMANN:  Your Honor, I also had asked for

04:33PM 10   comparable questions because one or more of the witnesses may

11   be African-American as well.  An experience, if you are going

12   to ask all the questions and then have people come up, I found

13   that people are very candid about those that have difficulties

14   with that issue of saying so, and it would mean another trip

15   from the jurors, but I'll leave it up to you, your Honor.

16         THE COURT:  I think what I'd be incline to do is

17   to -- Mr. Garrity, are you asking, for instance, that I ask

18   that question separately of all 45 people?  Another way to do

19   it is wait until we have 14 in the box.

04:34PM 20         MR. GARRITY:  Not to the full 45 but to the 14 that

21   are in the box.

22         THE COURT:  Whoever is in the box.

23         MR. GARRITY:  Right.

24         THE COURT:  All right.  What I'm going to do then is

25   to do this in two stages.  I think it is perhaps more important

1    for me to make the statement to everyone about the importance

2    of being fair and impartial and so forth without regard to

3    race, so I'll ask the question to everyone.  You know, if no

4    one raises their hand, I'll ask it again to the individual 14

5    people, and we'll handle it that way because, again, sometimes

6    these questions, again, my view is the question isn't as

7    important as the reminder sometimes to people, well-meaning

8    people, they need to hear certain things from the Judge, and

9    that's one of them.

04:35PM 10         MR. GARRITY:  Judge, so it's clear to me that the

11    questions that will be posed to the 14 in the box will be done

12    individually at sidebar.

13         THE COURT:  Yes.

14         MR. GARRITY:  Thank you.

15         THE COURT:  So it will be kind of a belt and

16    suspenders thing.  I will ask, you know, questions about

17    connections with taking it from the top with the lawyers,

18    whether they have any connection with the U.S. Attorney's

19    Office, Mr. Garrity's office, obviously whether they know the

04:35PM 20    defendant.  I will ask about whether they know any of the

21    potential witnesses in the case from both sides.  I'll ask

22    about special disabilities, physical problems, problems with

23    the trial schedule.  I don't expect we'll have much given how

24    short that is.

25         It's possible that there may be some people who will

1    express concern about being in the building during the Tsarnaev

2    case.  I'll take that up in due course.  I'll going to be

3    forthright with them, and what I expect to say to them is, you

4    know, we're doing it this way because of Tsarnaev, among other

5    things.  The building is going to be crowded, there's going to

6    be more security, it's going to take longer for people to get

7    through the screening downstairs, and they'll have to take that

8    into account, but we'll just see how people react.

9           I'm going to ask connections with law enforcement.

04:36PM 10   This is an area where not only do I ask the questions, but I

11   think it's important to tell them that, you know, if they have

12   preconceptions about the police and law enforcement officers

13   telling the truth, that sort of thing, that they need to be

14   honest about it.

15          I'll ask about previous involvement in a criminal

16   matter as defendant, victim or witness.  Is there any objection

17   to me asking questions about the fact that the defendant has a

18   felony conviction and whether they can remain fair and

19   impartial without regard to that?

04:37PM 20          MR. WORTMANN:  Your Honor, I think that's a core

21   instruction, and that's what I think the appropriate way of

22   dealing with it is, I believe.

23          THE COURT:  All right.

24          MR. GARRITY:  Your Honor, can I have one second?

25          THE COURT:  Yes.

1          MR. GARRITY:  Mr. Belin tells me he objects to that

2     question.  I think this gets to the nub of the issue we

3     discussed previously.  As his attorney, I would say we don't

4     object, but he wishes me to object on his behalf.

5          THE COURT:  Let me explain and make sure Mr. Belin

6     understands the point of this.  Again, sometimes if people hear

7     that the defendant has been previously been convicted of a

8     crime, any crime, they think, whoa, he must be a bad guy, I'm

9     going to have a thumb on the scale, I'm more likely to find him

04:39PM 10     guilty if he's got a prior conviction, and it's important for

11     me, first off, to try to screen out people who say they can't

12     be fair, which helps you.  It doesn't help the government at

13     all, it helps you, and also to tell them that they have to

14     decide this case on this evidence and it's not about whatever

15     you did or didn't do in the past, it's about this particular

16     case and that they're only to decide the case on these facts.

17          So it's a question and an instruction that helps you,

18     it doesn't help the government.  It's intended to find out

19     whether there are people who say they wouldn't be fair to you

04:39PM 20     if they knew you had a prior conviction, so that's the point of

21     it, and I think the government asked for it even if you didn't,

22     and I get to decide what the proper questions are, so I think

23     it's fair to you, and I'm inclined to ask it.

24          Mr. Belin, is there a particular problem you have with

25     it?  I mean, this fact is going to come out one way or the

1    other anyway, and the time to find out is before the trial

2    starts, not partway through.

3              THE DEFENDANT:  Do I have a right to object?

4              THE COURT:  Well, not really independent of your

5    lawyer, but I'll hear what you have to say.  What's your

6    problem with it?

7              THE DEFENDANT:  I just object.  I wasn't even

8    consulted before any of this got filed.

9              THE COURT:  All right.  Let's do this.  Why don't you

04:40PM 10   and Mr. Garrity go over these questions.  It's still two weeks

11   or so, more than two weeks before I'm going to do these

12   questions, and you'll have a further opportunity to suggest

13   additional changes or corrections or additions, okay, you'll

14   have chance to indicate whether or not you've got a problem

15   with any of these, okay.  We'll handle it that way.

16              THE DEFENDANT:  I have another question.

17              THE COURT:  Yes.

18              THE DEFENDANT:  I can change the exhibits on my

19   exhibit list?

04:41PM 20              THE COURT:  Well, you can take them off.  It will be

21   hard to add them.  In other words, I want to know what the

22   whole universe of possible exhibits are, but that doesn't mean

23   you have to introduce any of them.

24              THE DEFENDANT:  Can testimony be an exhibit?

25              THE COURT:  It's not technically an exhibit.  If

1   someone testifies differently, like if a cop takes the stand

2   and he says something different than he said at an earlier

3   occasion, you can impeach him with it, but normally the

4   testimony wouldn't come in, no.

5        So, you know, again, I'll make it up.  If a cop takes

6   the stand and he says it was raining, and he testified earlier

7   that it was sunny, your lawyer can impeach him and say isn't it

8   true that you said last time it was sunny?

9        THE DEFENDANT:  Okay.

04:42PM 10        THE COURT:  And you can call any of those witnesses if

11   you want to as adverse witnesses.  If you and your lawyer think

12   that's an appropriate strategy, you can do that, you have the

13   right to.

14        All right.  Just getting back to my questions, I'm

15   going to ask questions about attitudes about firearms, ask a

16   question about the fact that the defendant is African-American,

17   ask whether they've heard anything about the case, ask general

18   questions about willingness to follow the law, feelings about

19   the government lawyers and then I ask catch-all questions

04:42PM 20   ending with, "Is there anything anyone wants to raise with me

21   before we go any further?"

22        I have to say I have never impaneled a jury two weeks

23   in advance of the trial.  What is the parties' position on

24   whether I should swear the jury on Monday, at which point

25   jeopardy will attach, or should I swear them on January 5th?

1          MR. WORTMANN:  I think you should swear them in

2     January just in case.

3          THE COURT:  In case there's a problem?

4          MR. WORTMANN:  Yes.

5          THE COURT:  Mr. Garrity.

6          MR. GARRITY:  I would ask they be sworn on the 22nd.

7          THE COURT:  I guess I don't know.  Let me think about

8     that.  Let me look at what the considerations are.  If there

9     were a problem, it would be certainly cleaner and neater to not

04:43PM 10    have them sworn.  What's the advantage to swearing them,

11    Mr. Garrity?

12         MR. GARRITY:  Well, I mean, strategically from

13    Mr. Belin's standpoint, if they're sworn on the 22nd, if

14    jeopardy has attached at that point and if by chance something

15    were to happen, that puts him in a much more advantageous

16    position.

17         THE COURT:  Okay.  I understand.  Let me think about

18    that.  We'll talk about that at the time.  All right.  That's

19    the basic outline of the voir dire questions.  Yes,

04:44PM 20    Mr. Wortmann.

21         MR. WORTMANN:  Your Honor, two things that I'd ask,

22    one is that you specifically ask whether they've had any

23    experiences with Boston Police Department, that would color

24    because most of the officers here are going to be from the

25    Boston Police Department, and then when you ask the questions,

1    you ask them whether they, any member of their immediate family

2    or anyone that's particularly close to them has --

3              THE COURT:  When I ask almost all these questions, I

4    ask about immediate family members and close friends, and I

5    will try very hard to weigh this or to not put my thumb on the

6    scale, so if I ask about experiences with the Boston Police

7    Department, I'm going to say have any of you had any kind of

8    experience with the Boston Police Department, pleasant or

9    unpleasant, either way that would affect your ability to be

04:45PM 10   fair and impartial because if someone was, you know, rescued by

11   the Boston PD and they can't be fair in that regard, we need to

12   know that as well.

13             MR. GARRITY:  Your Honor --

14             THE COURT:  Yes, Mr. Garrity.

15             MR. GARRITY:  -- there were some questions on the

16   proposed questions I submitted with respect to law enforcement

17   and how the jurors should maybe evaluate their testimony.

18             THE COURT:  Yes.  What I do is I'm both going to talk

19   about preconceived ideas about law enforcement, you know,

04:45PM 20   whether people are more likely or less likely to tell the truth

21   and ask the question.

22             MR. GARRITY:  There are some particular questions that

23   I put in my proposed questions that I think given what

24   Mr. Belin has said here today in court and what he's told me

25   before I would think he would object to, but if I'm going to be

1    his attorney, I would ask that those questions be asked, and

2    those would be questions 10 through 12.

3                THE COURT:  Yes.  What I ask, have you ever been a

4    victim of a crime, ever been arrested or charged with a crime?

5                MR. GARRITY:  I'm sorry, Judge, it's in the law

6    enforcement section.  I think it was numbered wrong in that

7    section of the proposed voir dire questions.

8                THE COURT:  I'm looking at what I thought was

9    your -- I have page 2 of your questions 10 through 12, have

04:46PM 10   you, a relative or close friend ever been a victim of a crime?

11               MR. GARRITY:  No, 10 starts out, it's in the law

12   enforcement section.

13               THE COURT:  Oh, I'm sorry, I was looking at the

14   previous proposed voir dire.  All right.  I'm not sure about

15   12.  Yes, Mr. Wortmann.

16               MR. WORTMANN:  Your Honor, I object to any voir dire

17   questions that are asking about a theory of defense.  It's just

18   not appropriate, and I think a lot of these come -- I think

19   general questions regarding belief as to whether or not they're

04:47PM 20   going to treat law enforcement officers any differently from

21   any other witness, that's the key to the case, not, you know,

22   large number specific questions dealing specifically with

23   police officer credibility.

24               MR. GARRITY:  Your Honor, the reason I ask that those

25   questions be asked to the jury or the potential members of the

1    jury is given what the tenor of the defense may be, it's I'd

2    submit unusual, and I want to ferret out those jurors who may

3    think that there's no possibility of the defense being

4    plausible.

5         THE COURT:  All right.  Let me think about that.  I'm

6    disinclined to ask questions directly addressing a defense

7    theory as opposed to the broader point about credibility of law

8    enforcement, which I do think is important, but let me give

9    that some thought.  Anything else on the voir dire questions?

10        (No response)

11        THE COURT:  All right.  Once the jury is selected, I'm

12   going to give them preliminary jury instructions.  What I do is

13   talk about their duties, nature of the indictment, presumption

14   of innocence, burden of proof, talk about the nature of the

15   crime, give some basic information about objections and bench

16   conferences and handling credibility of the witnesses and so

17   forth.

18        I have some special instructions about, you know, not

19   discussing the case among themselves or with anyone else, not

20   discussing the case on the social network, not reading or

21   listening to anything about the case and so on.  I do let the

22   jurors take notes, and I give them cautions and instructions

23   about that.

24        I alert them that we will prepare no transcript.  I

25   will talk about my trial day, which is 9:00 to 1:00, 9:00 sharp

1    to 1:00 sharp.  Each day I want to meet at 8:30, unless we need

2    to meet earlier just to check in and make sure everyone is here

3    and make sure there is no issues in order to streamline bench

4    conferences.

5            I hope and assume that they'll be no issue getting

6    Mr. Belin into civilian clothing and all of that kind of thing.

7    We will take a break at 1:30 and one at noon.  It's really to

8    use the bathroom.  I tell them five minutes, it's usually more

9    like eight or nine, then we'll go to 1:00, and I explain to

04:50PM 10   them why we do it that way.

11           I'll make myself available before trial and after

12   trial to deal with evidentiary issues or anything else that

13   comes up in the trial.  Yes.

14           MR. WORTMANN:  Your Honor, forgive me, if I can, I

15   think it's really important in this case given the fact of the

16   time lapse between the 22nd and the 5th to specifically

17   instruct them they can't do any investigation.

18           THE COURT:  I do that in so many words.

19           MR. WORTMANN:  And just to be on the safe side because

04:51PM 20   I don't want to -- maybe say three or four days, especially if

21   we have to prove the felony conviction.

22           THE COURT:  Okay.  All right.  In terms of other

23   wrinkles, I give each juror their own written copy of the

24   instructions.  I tell them that they can write on them if they

25   want.  They have to read along with me as I read it aloud to

1    them, and they can take it back into the jury room.  I do that

2    because it greatly enhances juror comprehension.

3         Closing arguments will be government followed by

4    defense followed by a very brief opportunity for very brief

5    true rebuttal by the government.  I will not force you to

6    always examine from the podium, but you do have to exercise

7    common sense.  Everybody has to be able to see you and hear you

8    and not too close to the jury or the witness.

9         I'm going to use this witness stand.  I teach a class,

04:52PM 10   and I've been doing mock trials for years, and I experimented

11   with what the jurors liked in terms of that witness stand as to

12   this, and 100 percent of my mock jurors prefer this.  The only

13   real problem with it is my clerks can't see the witness and

14   sometimes they have to circle around, but jurors strongly

15   prefer it.

16        We do have a fully electronic courtroom, as I'm sure

17   you know, as well as a document camera.  Anything else you want

18   or need to know other than I'm going to set a conference for

19   next week?

04:52PM 20        MR. WORTMANN:  Your Honor, what do you want us to do

21   with objections from counsel table?

22        THE COURT:  Just objection or objection, hearsay, in

23   other words, a shorthand objection, leading, something like

24   that.

25        MR. WORTMANN:  Okay.

1          THE COURT:  All argument to occur at sidebar.

2          MR. WORTMANN:  Thank you.

3          THE COURT:  Mr. Garrity, anything?

4          MR. GARRITY:  Judge, I think the last thing, it's a

5     motion in limine.

6          THE COURT:  Yes, thank you, I forgot.  I think they're

7     largely resolved, but let me --

8          MR. GARRITY:  I think the one issue is the nature of

9     the prior felony if the government is going to have to prove

04:53PM 10     it.

11          THE COURT:  I think there are two dangling issues, if

12     I'm correct.  One is if there's no stipulation of the

13     conviction how the government is going to be able to prove that

14     conviction and whether or not you want to take fingerprints

15     from the arrest booking form, is that right?

16          MR. WORTMANN:  Your Honor, the fingerprints are -- the

17     fingerprints will come in because there was a fingerprint found

18     on the gun, so the fingerprints that we have, the fingerprints

19     from a prior arrest I believe will come in as prior business

04:54PM 20     records.  In addition, I have a booking officer who probably

21     will be prior recollection recorded.

22          And the booking sheets come in again under *Dardanelle*

23     as business records.  They corroborate the fact that these were

24     his fingerprints because they were taken on the same day.

25          THE COURT:  All right.  If they're going to come in, I

1    would like them to be as redacted as possible within reason.

2    In other words, if they are the defendant's fingerprints and

3    you can lay that foundation, that's fine, but, for instance,

4    what he was arrested for I think is unnecessary.

5        MR. WORTMANN:  Including the prior felony conviction,

6    your Honor?

7        THE COURT:  Well, the prior felony conviction I'm less

8    concerned about.

9        MR. WORTMANN:  I will redact all of the prior offenses

04:55PM 10   except the booking form for the prior offense, which is, you

11   know, again, Officer Bissonnette, and I'll continue to talk to

12   Mr. Garrity, and I'll give him copies of the proposed

13   redactions, and if there's any problems, we can talk about that

14   next week.

15       THE COURT:  Again, it's just to make sure that there's

16   no extraneous information.  The obvious concern, you know, is

17   he's arrested for X and never convicted of X.  I do not want

18   the jury --

19       MR. WORTMANN:  The things that are obviously

04:55PM 20   important, it's the same address, it's the same date of birth,

21   it's the same photograph.

22       THE COURT:  Identifying information, I understand and

23   I'm going to caution the jury, nonetheless, again, that that's

24   not what he's on trial for and they're not to consider that as

25   evidence of character.  In terms of the prior convictions,

1    remind me, what do you propose to do, Mr. Wortmann?

2              MR. WORTMANN:  Well, your Honor --

3              THE COURT:  Assuming there's no stipulation.

4              MR. WORTMANN:  Well, I have his probation officer,

5    Brandon McClellan will testify.  I have copy of the certified

6    conviction, and --

7              THE COURT:  And you're just going to prove one?

8              MR. WORTMANN:  Sorry.

9              THE COURT:  You're just going to prove one?

04:56PM 10     MR. WORTMANN:  Just going to prove one.  I don't think

11   it's appropriate to do more than that.  Officer Bissonnette was

12   also the arresting officer in that case, and he will say that,

13   you know, he arrested him on that date and he's aware that

14   there was, in fact, a conviction and the documents that relate

15   to that will include the Exhibit Number 2, which is the

16   supervision sheet that Mr. McLennan was given that simply shows

17   that he was, in fact, supervising Mr. Belin and Mr. Belin, it

18   was the crime for which he had been convicted and the sentence

19   that he was given showing it's more than one year.  The

04:57PM 20   certified copy of the conviction is under Exhibit 3.

21             THE COURT:  Why does the sentence he was given matter?

22             MR. WORTMANN:  Your Honor, he was sentenced to 18

23   months, therefore, it demonstrates as a matter of fact as

24   opposed to a matter of law that it was a crime punishable for a

25   period in excess of one year.

1          THE COURT:  Do we need to do that?

2          MR. WORTMANN:  Unless your Honor is going to instruct

3    them, and you certainly can do that given --

4          THE COURT:  Couldn't I take judicial notice of

5    whatever the Massachusetts --

6          MR. WORTMANN:  You can.

7          THE COURT:  Is this one of these problems where it's a

8    two and a half year misdemeanor?

9          MR. WORTMANN:  No, it's a 10-year felony for

04:57PM 10   possession of a firearm, your Honor.

11         THE COURT:  Why couldn't I just instruct them that you

12   put in proof that he was convicted of offense X and I instruct

13   them that offense X under Massachusetts law is a felony?

14         MR. WORTMANN:  In that case, I will redact the

15   sentence both from the supervision sheet and from the prior

16   certified copy of the conviction.

17         THE COURT:  Again, unless defendant raises it, I don't

18   see why that's necessary because I can just instruct them as a

19   matter of law.

04:58PM 20         MR. GARRITY:  Fine, Judge, but we object in general to

21   that, any information with respect to that prior conviction

22   coming in because it's basically the same crime he's charged

23   with here.  It deals with a firearm.  He wasn't a convicted

24   felon, but he was an unlawful possessor of a firearm and

25   ammunition.  It's basically one in the same charge.

1          THE COURT:  Again, I think the right way to go is the

2     stipulation.  If there's no stipulation, I have to let the

3     government prove its case.  You know, it's going to be the

4     minimum necessary to prove it beyond a reasonable doubt, but,

5     you know, or that's not phrasing it right.

6          The point is I'm going to try to keep as much

7     extraneous information from the jury as possible, for example,

8     whatever sentence he received is extraneous, but the fact of

9     conviction for a particular crime if he doesn't stipulate, I

04:59PM 10     think the jury needs -- I'll caution them, I'll give them a

11     instruction, but I think it has to come in.

12          MR. GARRITY:  Judge, can I quote one sentence from

13     *Old Chief* that I think shows why this is overly prejudicial,

14     especially given that the government has other crimes that they

15     could pick from to try to prove to the jury.

16          In *Old Chief*, it's on page 185, it says where a prior

17     conviction was for a gun crime or one similar to other charges

18     in a pending case, the risk of unfair prejudice would be

19     especially obvious, and I think that's the case here, Judge.

04:59PM 20     We might have jurors, despite the instructions they get from

21     the Court, finding him guilty of this charge simply because he

22     was convicted of a prior gun possession charge.

23          THE COURT:  Well, I think, and I might need a memo of

24     law on this, I think the government can, if he had 50 prior

25     convictions can put in proof of all 50, I think, regardless of

1    what they were for in the absence of a stipulation, but maybe

2    the thing to do is, you know, if you have a case rather than

3    the language in *Old Chief*, if you have some specific case --

4    this is so rare is part of the problem I have here, it's just

5    not normally done this way but some case that says, no, the

6    government can be forced to pick conviction X over conviction Y

7    because conviction X is similar to the --

8        MR. WORTMANN:  I'm quoting *Old Chief*, your Honor, and

9    the reason they said that it was the first time the Superior

05:00PM 10    Court held that the defendant can ram the stipulation down the

11    government's throat, and I say that that's why they were

12    concerned about it.

13        THE COURT:  Right.

14        MR. WORTMANN:  The key to any of this is in the

15    defendant's pocket.  I'll have the stipulation drafted in five

16    minutes.  I much rather have it.

17        MR. GARRITY:  Judge, I certainly agree that the

18    stipulation would be the better way to go, but, again, I would

19    just argue that the nature of the prior conviction is so close

05:01PM 20    to this one that I think that the prejudice would be

21    overwhelming.

22        THE COURT:  Well, that's certainly a reason to

23    stipulate.  If it's a reason to exclude it, I guess I'll need

24    some case law to convince me, that's true, and I'll take

25    another look at *Old Chief*.

1          Anything else?  So I guess formally the motion in

2     limine, Docket Number 168 is granted in part and denied in part

3     based on the government's response and what I've ruled on the

4     record here today, so basically what I understand is that the

5     government has represented that it is not going to offer any of

6     this information except to the extent that we're talking about

7     either the prior conviction or fingerprint type information.

8          MR. WORTMANN:  And I did say, your Honor, that if

9     there's -- if I think Mr. Garrity has opened up one of those

05:01PM 10   areas before I ask the question --

11          THE COURT:  Yes.

12          MR. WORTMANN:  -- and I will carefully instruct the

13     witnesses about this, I will come to sidebar and say I believe

14     he has, and I intend to ask this unless you order me not to.

15          THE COURT:  Yes.  That, of course, I'm going to keep

16     out all information about defendant being allegedly a member of

17     a gang, but, again, if somehow defendant opens that door, well,

18     you know, that's a different story.

19          Let's find a date next week when we can reconvene.

05:02PM 20   How about Thursday morning, 10:00, does that work?

21          MR. GARRITY:  I'm trying to think of my schedule

22     because I unfortunately did not bring my calendar.

23          THE COURT:  Let Lisa know if there's an issue.  I want

24     to give you a week.  I want you and Mr. Belin to both try to

25     work through the problems, I want to think about the issues

1    that's been raised.  I don't want to make any kind of decision

2    on your withdrawal now at a minimum.  I want to at least wait a

3    week, but I think a week is how much time we need, so if

4    there's an issue, let me know, otherwise it will be Thursday,

5    December the 18th at 10:00.

6              MR. WORTMANN:  Thank you.

7              MR. GARRITY:  Thank you, your Honor.

8              THE COURT:  Anything else, Mr. Wortmann?

9              MR. WORTMANN:  I don't believe so.

05:03PM 10          THE COURT:  Mr. Garrity?

11             MR. GARRITY:  No, your Honor.

12             THE COURT:  Thank you.  All rise.

13             (Whereupon, the hearing was adjourned at 5:03 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4    UNITED STATES DISTRICT COURT )

5    DISTRICT OF MASSACHUSETTS ) ss.

6    CITY OF BOSTON )

7

8         I do hereby certify that the foregoing transcript,

9    Pages 1 through 45 inclusive, was recorded by me

10   stenographically at the time and place aforesaid in Criminal

11   Action No. 13-10048-FDS, UNITED STATES OF AMERICA vs.

12   KING BELIN and thereafter by me reduced to typewriting and is a

13   true and accurate record of the proceedings.

14        Dated this 28th day of December, 2015.

15                         s/s Valerie A. O'Hara

16                    _____

17                    VALERIE A. O'HARA

18                    OFFICIAL COURT REPORTER

19

20

21

22

23

24

25