```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS



 UNITED STATES OF AMERICA,       )
                                 )
               Plaintiff,        )
                                 )
                                 )  No. 13-10048-FDS
 vs.                             )
                                 )
 KING BELIN,                     )
               Defendant.        )



 BEFORE:   THE HONORABLE F. DENNIS SAYLOR, IV



                            HEARING




       John Joseph Moakley United States Courthouse
                    Courtroom No. 2
                   One Courthouse Way
                    Boston, MA 02210


                     May 11, 2015
                      3:57 p.m.





                   Valerie A. O'Hara
                 Official Court Reporter
       John Joseph Moakley United States Courthouse
              One Courthouse Way, Room 3204
                    Boston, MA 02210
               E-mail: vaohara@gmail.com
```

APPEARANCES:

For The United States:

    United States Attorney's Office, by JOHN A. WORTMANN, JR., ESQ., 1 Courthouse Way, Suite 9200, Boston, Massachusetts 02110;

For the Defendant:

    PAUL J. GARRITY, ESQ., 14 Londonderry Road, Londonderry, New Hampshire 03053.

```
 1                          PROCEEDINGS
 2            THE CLERK:  All rise.  Thank you.  You may be seated.
 3   Court is now in session in the matter of United States vs.
 4   King Belin, Criminal Matter Number 13-10048.
 5            Counsel, will you please identify yourself for the
 6   record.
 7            MR. WORTMANN:  Your Honor, good morning, John Wortmann
 8   for the United States.
 9            MR. GARRITY:  Good morning, your Honor, Paul Garrity
10   for King Belin.
11            THE COURT:  This is the sentencing of King Belin.  I
12   received really just a few minutes before I came on the bench a
13   motion to continue the sentencing hearing and then an amended
14   motion to continue the sentencing hearing, the difference
15   being, I think, is whether or not the government objects to the
16   motion.  Why don't we take that up first.  Mr. Garrity.
17            MR. GARRITY:  Yes, your Honor.  Initially, I'll just
18   say, Judge, I apologize for the late nature of the filing.  I
19   just came across Johnson v. United States yesterday when I was
20   preparing for the hearing, and when I read the briefs and the
21   supplemental briefs, and if I understand the history of that
22   case, the initial petition for cert. to the Supreme Court did
23   not even raise the issue of the residual clause, and the case
24   was argued in November, I believe, of 2014 initially, and then
25   the Supreme Court on its own volition issued an order in
```

(timestamps: 10:01AM at line 10; 10:02AM at line 20)

1    January of this year asking the parties to rebrief the issue of

2    whether or not the residual clause of the armed criminal act is

3    unconstitutionally vague.  Both parties filed supplemental

4    briefs, and it was just argued April 20th.

5         THE COURT:  Residual clause meaning the clause that

6    otherwise involves conduct that presents a serious potential

7    risk of physical injury?

8         MR. GARRITY:  Yes, your Honor, and I know in our

9    circuit citing with *Almenas*, that clause has been interpreted

10:03AM 10   with respect to resisting arrest convictions to determine those

11   offenses are violent felonies.

12        Both parties in the *Johnson* case addressed the later

13   case of *Weeks* in both of the supplemental briefs, so I think

14   the issue is a live one at this point based on --

15        THE COURT:  And, I'm sorry, just because it happened

16   so late, I haven't had a chance to look at it.  The

17   First Circuit law on resisting -- the Massachusetts resisting

18   arrest statute, has that been under the residual prong or has

19   it been under the use of physical force?

10:04AM 20   MR. GARRITY:  Both, Judge.  In *Almenas*, the Court said

21   there's two methods of committing resisting arrest under the

22   Massachusetts statute.  One follows clearly within the first

23   prong of the violent felony definition.  The second one they

24   determined fell within the second prong, the residual prong,

25   and they did a *Begay* analysis and found it was purposeful,

|   |   |
|---|---|
| 1 | violent and aggressive, as they viewed it. |
| 2 | That was carried on in *Weeks* and *Carrigan*, so in part |
| 3 | it's determined by the residual clause to be a violent felony. |
| 4 | If the *Johnson* case finds that the residual clause is |
| 5 | unconstitutionally vague, I think that leaves open the question |
| 6 | whether or not the cases in the First Circuit were correctly |
| 7 | decided. |
| 8 | THE COURT:  But if they found that the resisting |
| 9 | arrest statute fell under the other prong of the statute, why |
| 10:05AM 10 | would the case law no longer be good? |
| 11 | MR. GARRITY:  Because there's two ways of committing |
| 12 | it, Judge, and I guess that would then -- |
| 13 | THE COURT:  Two ways of committing it, meaning we have |
| 14 | to look to what the charging documents say? |
| 15 | MR. GARRITY:  Exactly, Judge, and what the defendant |
| 16 | pled to and all of the modified categorical approach documents |
| 17 | that are allowed to be looked at.  I think that would determine |
| 18 | whether or not if the residual clause is voided could affect |
| 19 | whether or not resisting arrest convictions still stand as |
| 10:05AM 20 | violent felonies. |
| 21 | Judge, I think that issue is a live one because, as I |
| 22 | say, both parties addressed it in the supplemental briefs, so I |
| 23 | think the parties in that case believed it's part of the |
| 24 | analysis, and I think it really calls into question given what |
| 25 | Mr. Belin is looking at here, I would ask that the Court |

1    consider postponing the sentence until *Johnson* is decided.

2    THE COURT: Help me out. If the case was reargued on

3    April 20th, does that mean that a decision is going to almost

4    certainly will come out before they go off for the summer, that

5    is, at the end of June or thereabouts?

6    MR. GARRITY: I would think so. I think that's a fair

7    guess. As I say, it was initially argued last fall and then

8    reargued on this additional issue that the Court raised.

9    THE COURT: Mr. Wortmann.

10:06AM 10    MR. WORTMANN: Your Honor, I guess here are the things

11    that I'm sure of about this case. One is that the law, as it

12    currently stands, resisting arrest is a violent felony for the

13    purposes of the armed career criminal act.

14    Secondly, this case has been pending for two and a

15    half years, and regardless of how the -- it's not clear that a

16    decision either way would affect this case. We just won't know

17    until we see the decision. Even if they conclude that there's

18    a void for vagueness problem, and I'm not aware of any lower

19    courts that have held that, and I think there's some doubt in

10:07AM 20    the Supreme Court language, but, you know, it seems to me, your

21    Honor, that even if he was not an armed career criminal, his

22    guideline range would be 28-6, which is 140 to 175 months, and

23    I think that it's two and a half years in pretrial confinement

24    is enough, and we ought to start -- we ought to get Mr. Belin

25    out to the Bureau of Prisons where he can get appropriate

1 programming. If the, you know, most extreme thing happens and
2 we have to re-sentence him, we're all ready to go, and it's
3 time to move this case out of here, and if we have to bring it
4 back, it won't be the only case that gets brought back. And if
5 this happens quickly, he might not even be out of the district
6 by the time it happens, but I'm prepared to go forward today.
7       THE COURT: Let me ask about that. I mean, one of the
8 things that obviously concerns me is suppose *Johnson* comes out,
9 it's favorable to the defendant, would that have to cycle
10:08AM 10 through an appeal or would the government -- how would that --
11       MR. WORTMANN: Well, your Honor.
12       THE COURT: I lose jurisdiction, don't I, once I
13 sentence him?
14       MR. WORTMANN: You do, but when his appeal was filed,
15 and that's going to depend on what the language of the case is
16 because I've said it could or could not affect this case. I
17 don't know, Mr. Garrity, none of us know, and if it does affect
18 this case, then I suspect that they'll be -- this could involve
19 enough cases so they'd be broad guidelines, and I would think
10:09AM 20 the Department of Justice would move fairly quickly, as it has
21 on the crack re-sentencing a number of times, but, you know,
22 the downside is really none other than the fact that Mr. Belin
23 would have to be brought back in for a re-sentencing. It's
24 going to be one of many, but, again, it could come in June, it
25 could be one of those rare cases or unusual cases, and I agree

1   it's unusual that it gets decided during the summer, but once

2   it's decided, it doesn't necessarily mean that we're going to

3   be able to resolve it, so we may be still trying to figure out

4   what it means, and Mr. Belin is still sitting in pretrial

5   custody, you know, in substantial lockdown 23-7 and getting

6   very little programming.

7   You know, if this were a case where he could be

8   looking at time served or anything close to that, but that's

9   not going to happen here because of the seriousness of the

10:10AM 10   criminal record because you've got two priors, you've got an

11   obliterated serial number, so I still think regardless of what

12   happens, he's going to be looking at -- there was drugs

13   involved as well, we're going to be looking at a serious

14   sentence, and I think we ought to have him start serving that

15   sentence both for his own good and the sense of just moving the

16   case along.

17   THE COURT: Mr. Garrity.

18   MR. GARRITY: Judge, I could see, Number 1, reading

19   the teas leaves in terms of what the Court may do, but I think

10:10AM 20   it is telling that when I read through the documents of the

21   initial cert. petition did not raise the issue and the

22   Supreme Court on its own ordered the parties to address the

23   issue, and I looked at a blog, Supreme Court blog, and if I

24   read it correctly, it indicated the votes may not be there for

25   the residual clause to survive.

1         THE COURT: Let's assume that's true. I mean, the
2   question then is then what? Again, if the resisting arrest --
3         MR. GARRITY: If they're found not to be predicate
4   offenses, Judge, then Mr. Belin is looking at a 10-year
5   maximum, so it is a sizeable swing for Mr. Belin. I would
6   guess, again, it's just a guess but the Supreme Court would
7   decide by the end of -- before they go off for the summer
8   recess.
9         I think it would be a better use of judicial resources
10:11AM 10  to keep Mr. Belin here. That way I can consult with him. If
11  he's sent off into the B.O.P., he's going to be in a prison far
12  away from my office. The only communication I'll have with
13  him, by phone and letter, now I have personal contact with him.
14  If we put it off until some time in July or August, that would
15  be my request, your Honor.
16        MR. WORTMANN: I'd certainly join in the
17  recommendation for the B.O.P. that Mr. Belin be sent to the new
18  facility in New Hampshire, which means he'll be close to
19  Massachusetts.
10:12AM 20        THE COURT: Is that the new one in Berlin?
21        MR. WORTMANN: Correct.
22        THE COURT: There's no guarantee that will happen?
23        MR. WORTMANN: There is no guarantee, that is correct,
24  your Honor.
25        THE COURT: All right. I think this is a close call

either way. I think with some misgivings because I certainly take heart with what Mr. Wortmann is saying, I think in the scheme of things, another 60 days probably doesn't make that big a difference. I'd be disinclined to continue it beyond that. If the decision is still pending, I think we'll go forward and handle it that way, but I think at this stage we may as well wait the extra time, again, with some misgivings. It's not clear to me what difference or even if it does make a difference whether we will be able to process it or not. I think Mr. Belin is looking at 10 years, 15 years, 16 years as the government recommends or conceivably higher, although that's doubtful, given the government's recommendation. How about Thursday, July 9th at 2:00? Will that work for sentencing?

MR. WORTMANN: Yes, your Honor.

MR. GARRITY: Yes, your Honor.

THE COURT: So I will grant the motion to continue to that extent. It may not give us much time to process the decision if we have to do some kind of hearing where we're looking at what underlies these resisting arrest offenses, we'll take that up in due course and see what happens. I guess I'm convinced that this is the prudent and sensible thing to do, although, obviously it's not completely clear. We'll handle it that way, Thursday, July 9th for the sentencing. We'll see where we are at that point.

1           MR. GARRITY:  Thank you.
2           MR. WORTMANN:  Thank you, your Honor.
3           THE CLERK:  All rise.
4           (Whereupon, the hearing was adjourned at 10:15 a.m.)

```
 1                         C E R T I F I C A T E
 2
 3
 4    UNITED STATES DISTRICT COURT )
 5    DISTRICT OF MASSACHUSETTS ) ss.
 6    CITY OF BOSTON )
 7
 8            I do hereby certify that the foregoing transcript,
 9    Pages 1 through 12 inclusive, was recorded by me
10    stenographically at the time and place aforesaid in Criminal
11    Action No. 13-10048-FDS, UNITED STATES OF AMERICA vs.
12    KING BELIN and thereafter by me reduced to typewriting and is a
13    true and accurate record of the proceedings.
14               Dated this 4th day of January, 2015.
15                         s/s Valerie A. O'Hara
16                         _____
17                         VALERIE A. O'HARA
18                         OFFICIAL COURT REPORTER
19
20
21
22
23
24
25
```