```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2


 3


 4    UNITED STATES OF AMERICA,        )
                                       )
 5                    Plaintiff,       )
                                       )
 6                                     )  No. 13-10048-FDS
      vs.                              )
 7                                     )
      KING BELIN,                      )
 8                    Defendant.       )


 9


10    BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV


11


12                         SENTENCING


13


14


15         John Joseph Moakley United States Courthouse
                       Courtroom No. 2
16                    One Courthouse Way
                      Boston, MA 02210
17


18                    September 29, 2015
                         2:00 p.m.
19


20


21


22


23                    Valerie A. O'Hara
                     Official Court Reporter
24    John Joseph Moakley United States Courthouse
                 One Courthouse Way, Room 3204
25                    Boston, MA 02210
                E-mail: vaohara@gmail.com
```

1    APPEARANCES:

2    For The United States:

3         United States Attorney's Office, by JOHN A. WORTMANN, JR.,
     ESQ., 1 Courthouse Way, Suite 9200, Boston, Massachusetts
4    02110;

5    For the Defendant:

6         PAUL J. GARRITY, ESQ., 14 Londonderry Road,
     Londonderry, New Hampshire 03053.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>PROCEEDINGS</u>

THE CLERK:  All rise.  Thank you.  Please be seated.
Court is now in session in the matter of United States vs.
King Belin, Criminal Matter Number 13-10048.

Will counsel please identify themselves for the
record.

MR. WORTMANN:  Good afternoon, your Honor,
John Wortmann for the United States.

MR. GARRITY:  Your Honor, good afternoon, Paul Garrity
for King Belin.

THE COURT:  Good afternoon.  This is the sentencing of
King Belin.  I've received and read the pre-sentence report
through its latest iteration, which is September 18th, the
defendant's original sentencing memorandum filed on April 23rd
and motion for a nonguideline sentence filed September 28th as
well as the government's original sentencing memorandum from
last March and the supplemental memorandum filed on
September 23rd.

To my knowledge, no other materials have been
submitted to the Court.  Is there anything else I should have
seen that I have not, Mr. Garrity?

MR. GARRITY:  Not in writing, but Mr. Belin has asked
me to raise some objections to the PSR report.

THE COURT:  All right.  It's going to need some
corrections, I think, in light of the government's position

1    anyway, but Mr. Wortmann.

2         MR. WORTMANN:  Your Honor, the only other thing, just

3    a notification that we'd be seeking a nonguideline sentence.

4         THE COURT:  Yes, okay.  All right.  Mr. Garrity, I

5    know you've reviewed the PSR.  Have you gone over it with

6    Mr. Belin?

7         MR. GARRITY:  I have, your Honor.

8         THE COURT:  Is that correct, Mr. Belin?

9         THE DEFENDANT:  Yes.

02:04PM 10        THE COURT:  All right.  My understanding as to the PSR

11   and what otherwise would have been a significantly higher

12   guideline range is that the government is taking the position

13   that all four offenses described in the PSR at paragraphs 34,

14   35, 36 and 38 for resisting arrest or assault and battery on a

15   police officer are not scorable as crimes of violence in light

16   of *Johnson,* and, therefore, the total offense level is -- well,

17   the base offense level level is 14 with a four-level

18   enhancement because of the issue with the serial number.

19        So, to that extent, I think the PSR needs to be

02:05PM 20   changed to reflect that position with the right guideline

21   range.

22        PROBATION OFFICER:  Yes, your Honor.

23        THE COURT:  Okay.  First off, any issue or correction

24   with that?  Again, I'll walk through the guidelines more

25   formally, but basically we're down to a guideline range of 57

1    to 71 months?

2            MR. GARRITY:  Judge, as I indicated in the

3    supplemental sentencing memorandum I filed yesterday, Mr. Belin

4    has asked me to take the position that the four-level

5    enhancement for the obliterated serial number does not apply

6    because it was not alleged in the indictment and not proven to

7    the jury beyond a reasonable doubt.

8            THE COURT:  Okay.  Let me, putting that to one side

9    for just a moment, does he have any other corrections or

02:05PM 10    objections to the PSR?

11            MR. GARRITY:  He does, Judge.  In paragraph 9, he's

12    asked me to object to the language in paragraph 9.  It's on the

13    fourth line of that paragraph.  That indicates he quickly

14    walked down Mildred Avenue.  He objects to that.

15            THE COURT:  It's not going to affect his sentence,

16    that difference, and, obviously, this is the government's

17    version of the offense as edited by probation, so I note the

18    objection, but I'm going to leave the report as it is in that

19    regard.

02:06PM 20            MR. GARRITY:  Judge, he's got another.

21            THE COURT:  Yes.

22            MR. GARRITY:  In paragraph 11.

23            THE COURT:  Yes.

24            MR. GARRITY:  He objects to the entire paragraph.

25    He's asked me to object to the entire paragraph.

1           THE COURT:  All right.  Again, that may relate to the

2     issue of the legality of the search, but that's not going to

3     affect the sentencing calculus in any way, so, again, I will

4     note the objection, but I'll leave the report as is.

5           MR. GARRITY:  Thank you.  Judge, in paragraph 12,

6     again, he's asked me to object.  That's in the second sentence.

7     It begins with, "In response, Belin immediately reached to his

8     waist with both hands."  He's asked me to object to that.

9           THE COURT:  Same ruling in that regard.

02:07PM 10           MR. GARRITY:  Again, he objects to the four-level

11     enhancement.

12           THE COURT:  All right.  Let's talk about the

13     four-level enhancement.  Let me find my copy of the guidelines

14     here.  What's the guideline provision?

15           MR. WORTMANN:  I believe it's 2K2.1, your Honor, and I

16     believe it's --

17           MR. GARRITY:  It's 2K2.1(b)(4).

18           THE COURT:  Yes, okay.  All right.  Mr. Garrity.

19           MR. GARRITY:  Judge, just before I begin my argument,

02:08PM 20     Mr. Belin has asked me to present another argument that I would

21     just say to the Court I can't in good faith present because I

22     don't think it's an accurate reading of the guidelines, but,

23     nevertheless, he's asked me to present it.

24           But with respect to the objection I laid out in my

25     supplemental sentencing memorandum, he would object to the

1    enhancement being applied because it was not alleged in the

2    indictment and not proven to the jury beyond a reasonable

3    doubt, and I would submit as a matter of constitutional law

4    with respect to the Sixth Amendment that he's entitled to have

5    that alleged and proved.

6         I guess I acknowledge that *Alleyne* didn't go quite

7    that far, but I think there's some hints in some of the case

8    law subsequent to *Apprendi* that eventually the Court might go

9    that way, but, as a constitutional matter, he's asked me to

02:09PM 10   present that argument.

11        In addition, it is the government's burden with

12   respect to that enhancement.  I'm not sure that they've

13   presented sufficient evidence at this hearing with respect to

14   whether or not the serial number was obliterated, or I just

15   want to make sure I've got the correct language, Judge, altered

16   or obliterated.

17        THE COURT:  All right.  As to the Constitutional Sixth

18   Amendment argument, I overrule the objection.  You're correct,

19   the case law does not go so far.  Again, we're talking about a

02:09PM 20   guideline enhancement here, but I will overrule the objection.

21        Mr. Wortmann, do you want to respond as to whether the

22   facts support the application of the enhancement?

23        MR. WORTMANN:  Your Honor, you know, the objection

24   here is a little bit late because had it been made in a timely

25   fashion, I wouldn't have the gun here.  Once again, the gun was

1    before the Court.  I produced photographs that showed that the

2    serial number had been obliterated.

3        THE COURT:  And the PSR says that as well.

4        MR. WORTMANN:  And the PSR says that as well.

5        THE COURT:  All right.  That objection is overruled as

6    well.

7        MR. GARRITY:  Judge, he's got one further objection to

8    the enhancement that he's asked me to point out to the Court.

9    Mr. Belin believes that due to the application note, which is

02:10PM 10   application note 8, he believes that that enhancement only

11   applies to people convicted of offenses that can be found under

12   2K2.1(b)(7) --(a)(7), Judge.

13       THE COURT:  (A)(7), all right.

14       MR. WORTMANN:  Your Honor, if you read the plain

15   language of 2K2.1(b)(4) says, "If any firearm had an

16   obliterated serial -- had an altered or obliterated serial

17   number increased by four levels, the plain language of that

18   guideline provision controls," and the law is pretty clear that

19   the four-level enhancement applies any time that the gun that's

02:12PM 20   charged in the offense of conviction has an obliterated or

21   altered serial number.

22       THE COURT:  All right.  I'm going to overrule that

23   objection as well.

24       MR. WORTMANN:  Your Honor, if I could.

25       THE COURT:  Yes.

1          MR. WORTMANN:  Forgive me, if I could just comment on

2      one of the objections, and that is the objection with respect

3      to paragraph 12 of the PSR.

4          THE COURT:  Yes.

5          MR. WORTMANN:  While that is not technically an issue

6      for a guideline, it is one of the things, the resistance and

7      the movement that Mr. Belin made towards his waist is one of

8      the issues that I believe is relevant at determining whether or

9      not a nonguideline sentence is warranted, and I would simply

02:12PM 10  ask the Court to rely on its own memory of the trial testimony

11     of Officer Bissonnette and the other arresting officers about

12     the nature of Mr. Belin's resistance when he was first

13     approached near the electrical box in the park, and I think

14     Officer Bissonnette's testimony, in particular, my memory it

15     was pretty clear that, you know, he started moving, Mr. Belin

16     started moving his hands towards his waist, and they were

17     afraid that he was going to the gun, and, of course, the

18     offense conduct is also clear that the gun was both fully

19     loaded and had a round in the chamber.

02:13PM 20          THE COURT:  All right.  It seems to me there are two

21     different issues there.  The reasonableness of the officer's

22     reaction is one thing and goes to the reasonableness of the

23     search or the frisk.

24          What Mr. Belin was intending is something different.

25     I don't think that I have a sufficient factual basis to

1    conclude that Mr. Belin was reaching for a weapon in order to

2    use or threaten police officers at the time of the stop.

3            MR. WORTMANN:  The issue is -- with respect, your

4    Honor, the issue is not one of intent but rather of reckless

5    endangerment, and while when I --

6            THE COURT:  Well, he had the gun on him, it was

7    loaded, fine, and I've already ruled I thought the police

8    officers acted reasonably within the meaning of the Fourth

9    Amendment.  I'm not sure I can take it any farther than that in

02:14PM 10   terms of, you know, whether he was prepared to use it against

11   the officers or threaten it against the officers.

12           MR. WORTMANN:  And it's really, you know, I think here

13   it's the fact that the gun had a round in the chamber, the fact

14   that he resisted that created the risk of harm to both the

15   officers, himself and other people in the area.

16           THE COURT:  That I think is fair argument.  Let's go

17   back.  All right.  In terms of the PSR, I've indicated that it

18   needs to be corrected to reflect the government's position on

19   *Johnson*.  I've overruled the defendant's other objections.

02:14PM 20           Are there any other objections that I need to rule on

21   before we go any further with regard to the PSR, Mr. Garrity?

22           MR. GARRITY:  No, your Honor.

23           THE COURT:  Mr. Wortmann?

24           MR. WORTMANN:  Thank you, no.

25           THE COURT:  All right.  So with that, the base offense

1   level rather than being 24 is 14.  I will apply the four-level

2   enhancement.  That brings us to a level 18.  His criminal

3   history score is 15, his criminal history category is VI.  That

4   produces a guideline range of 57 to 71 months, a supervised

5   release range of one to three years, a fine range of $6,000 to

6   $60,000 and a $100 special assessment.

7          Is there any correction to that calculation?

8          MR. WORTMANN:  No, your Honor.

9          MR. GARRITY:  No, your Honor.

02:15PM 10   THE COURT:  Okay.  All right.  With that then as our

11   starting point, and, Mr. Garrity, remind me, how long has the

12   defendant been in custody?

13          MR. GARRITY:  Judge, there was a period of time where

14   he was held on a state charge related to this, and then there

15   was a probation violation that he was held on.  I would argue

16   that was related to this because the violation was based on

17   this offense, so he's been held since September of 2012.

18          THE COURT:  September, 2012 is on state custody?

19          MR. GARRITY:  He came into federal custody, I believe.

02:16PM 20   THE COURT:  October 9th, 2013 is what I have.

21          MR. GARRITY:  That's correct, your Honor, but I

22   believe Bureau of Prison will give him credit for the time held

23   on the related charge, and I submit he should be given credit

24   for the probation violation as well because it's all

25   intermingled with the offense conduct.

1          MR. WORTMANN:  Your Honor, in fact, had Mr. Belin been

2     revoked and a probationary revocation sentence imposed, then he

3     would not be entitled, but because, as indicated in the PSR,

4     because even though he was on probation for this earlier gun

5     offense, that probation violation was ultimately dismissed, and

6     he was sent over here, therefore, I believe that the Bureau of

7     Prisons will give him credit going all the way back to

8     September.

9          THE COURT:  September, 2012?

02:17PM 10         MR. WORTMANN:  September 17th, 2012.

11         THE COURT:  Okay.  All right.  With that as our

12    starting point, Mr. Wortmann, let me hear the government's

13    recommendation.

14         MR. WORTMANN:  Thank you, your Honor.  Your Honor, you

15    have a lot of paper in front of you, I apologize to the point

16    that the sentencing memorandum was repetitive, but I frankly

17    wasn't sure how much to do, so I included it.

18         I'm asking you for an 84-month sentence, which is

19    approximately 13 months over the high end of the guideline

02:17PM 20    range that you've calculated, and it's based on some very basic

21    and very simple things.

22         One is the seriousness of firearm offenses in this

23    district and both in *Politano* and *Diaz-Rio*, the First Circuit

24    has recognized that gun offenses can be held, can be recognized

25    by the District Court to be particularly serious, and on that

1    basis alone, a departure from the guidelines is appropriate.

2        I've given your Honor some of the things, some

3    excerpts of the things that you read in the newspapers every

4    day, some particular incidents of late in these neighborhoods

5    because, as the research makes clear, it's small sections of

6    Roxbury, Dorchester and Mattapan that are subjected to these

7    gun offenses.

8        Back several years ago, the Kennedy School did a study

9    of where the gun offenses, the shootings happened in the City

02:18PM 10   of Boston over a 20-year period.  They found that 5 percent of

11   the shootings happened in 78 percent of the city, and nearly 80

12   percent of the city had never had a single shooting, and

13   Norfolk Park, as you heard originally at the detention hearing,

14   and the area around where the incident happened are several

15   blocks away from where Mr. Belin's 2009 car stop, when he had

16   another gun and another weapon in his car along with his son,

17   is in the center of one of those areas.

18       That by itself justifies the increase over the

19   guideline range, but here, you know, I ask the Court to look

02:19PM 20   carefully at the specific circumstances leading up to the

21   arrest and the seizure of the firearm from Mr. Belin.

22       The fact that he had additional ammunition, your

23   Honor, in that Newport cigarette package, and, you know, at

24   least one District Court Judge, as I had indicated in both the

25   memos, had found something.  You know, if you have extra

1   ammunition, it's further indication that the gun is going to be

2   used.

3           The fact that he had been shot in May of 2012, along

4   with one of his friends, you know, and the traditional

5   retaliatory nature of the shooting in Boston just says that

6   this is a more serious case than the run-of-the-mill gun felon

7   in possession case.

8           The fact that he had marijuana on him, no evidence

9   that there was distribution, otherwise he would have been

02:20PM 10  subject to a four-level, therefore, the only thing that we

11  could conclude is that it was for personal use, the only

12  logical, reasonable, and whether he had already smoked or he

13  was planning to smoke, that combination of marijuana and a

14  loaded firearm just makes the case more serious because it

15  makes it more likely that who has ever got the gun is going to

16  make bad judgments.

17          And the record is replete, your Honor, with Mr. Belin

18  making bad judgments.  The location, you know, it's not just

19  that it was the center of gang activity, but it's the fact that

02:20PM 20  this is a park where children and their parents play every day,

21  and if you recall the photographs that were introduced at trial

22  and testimony at trial, that electrical box where the stop was

23  actually made was literally, you could reach over to the tot

24  lot, and people were playing there.

25          That, again, makes it more serious, as does the fact

1   that the manner in which he resisted the officer's attempts to

2   secure and subdue him.  You know, I don't think three cops had

3   to come in in order to get him under control.  You know, that's

4   a fact that you heard in the trial, the fact that that gun was

5   in the waistband, the fact that that gun had a round in the

6   chamber, you know, it increased it, you know, whether or not

7   within the meaning of *United States vs. Bell*, it would qualify

8   as reckless endangerment.

9          I didn't seek that enhancement because originally he

02:21PM 10   was an ACC, and it didn't apply, but the loss surrounding

11   3(c)1.2 and *Bell* can be found, your Honor, at 953 F.2d 6 talks

12   about the mere hesitation when ordered to the ground when you

13   have a gun is not sufficient to constitute reckless

14   endangerment, but it says that actually making a move towards

15   the gun might be, and I'm not asking you to do a specific

16   upward adjustment because we didn't do it in response to the

17   original PSR, but I do think, your Honor, that the way in which

18   Mr. Belin reacted, the fact that that gun was loaded with a

19   round in the chamber makes this a more serious case, and,

02:22PM 20   finally, the thing that makes it a more serious case is the

21   fact that he previously had been arrested for another firearm

22   by the same officer a couple blocks away, and as the offense

23   conduct and as the reports attached to the supplemental

24   memorandum make clear, there is an additional weapon in that

25   car, there was a holster in that car, and his infant son was in

1    the car in the back seat, all of which makes it more serious,

2    as does Mr. Belin's criminal history.

3         Counsel says, oh, his criminal history is overstated,

4    and I suggest, your Honor, it's quite the opposite.  If you

5    look at the PSR, he's been under continuous judicial criminal

6    justice supervision for almost 11 years.

7         During that time, he's got 20 convictions, that he's

8    been convicted of 20 charges, he's been sentenced seven times.

9    He's been violated probation six times, and at the time of the

02:23PM 10   offense here, as I've indicated, he was on probation for

11   another gun offense, and he was also on pretrial release on

12   another automobile offense.

13        All of those things make this a more serious case than

14   the typical gun case, which is a serious case in this district

15   and one that for purposes of all of the provisions of 3553, but

16   particularly special and general deterrence, you know, is

17   really critical, and that is, you know, letting Mr. Belin know,

18   letting the four gentlemen that he was with that day know, all

19   the people that, you know, from that area in the city know that

02:23PM 20   if you get caught with a gun, everybody is going to consider it

21   to be a serious case.

22        Now, there's a couple of mitigation factors that are

23   argued.  There's did Mr. Belin -- he's got mental health

24   issues.  We know that.  I've never seen the report, but I

25   recognize that from the provisions of the pre-sentence report.

He did not have a terrific upbringing.  He had some problems in
school, and here's the issue, Judge.  Every one of those things
I recognize.  Every one of those things with any defendant has
a tendency to make them less culpable for their crimes, but at
the same time, if you look at the same literature, it also
makes them more dangerous, and as the Supreme Court recognized
in *Pinholster* with respect to mental health issues that it's
impossible to figure out how to balance those.

At least in the absence of a very specific and very
detailed report that says that this particular kind of mental
health, you know, can be dealt with and is not going to cause
him to be more dangerous and more likely to recidivate when he
gets out.  All those things, your Honor, when I put them
together in the government's view fully justifies a sentence of
84 months.

In addition, your Honor, I don't believe there's any
basis for a fine.  I'm asking for a $100 mandatory special
assessment, a final order of forfeiture both with respect to
the charged firearm and the charged ammunition and three
judicial recommendations because, you know, if Mr. Belin's
future is going to be better than his life up until today, we
have to start worrying about what the system can do to help him
because the sentences are only going to get longer, and the
danger to him, he's been shot once already, is only going to
increase.

1          A recommendation for any mental health treatment

2     that's available for any alcohol abuse, any treatment regarding

3     alcohol, because as I read the PSR, even though he was a

4     regular smoker of marijuana, it really appears that alcohol was

5     the biggest problem and any vocational training.

6          On supervised release, your Honor, I'd ask for, 1,

7     that while he's on supervised release he be prohibited from

8     drinking alcohol whatsoever, that your Honor require that he

9     not associate with the individuals that were included on the

02:26PM 10     associational restriction, which is, quite frankly, when I

11     drafted it, it was on the assumption that this was going to be

12     at least a 15-year sentence, and, therefore, I narrowed it,

13     and, obviously, I'll stick to that.

14          Three of the four individuals that was with him, the

15     fourth had no gang experience.  People who he's been FIO'd

16     with, people who's been involved with incident reports and

17     other individuals from this area of the city that have federal

18     convictions, that for the first year of when he's out, when he

19     finishes with the BOP custody, when he's not in a halfway house

02:27PM 20     that he be given a 9 p.m. to 7 a.m. curfew to be enforced by

21     electronic monitoring because the first 12 months is always the

22     most significant and also the most likely.

23          All the literature tells us when someone is going to

24     get into trouble, if we can keep him, you know, inside in the

25     evening and early morning hours when a great percentage of the

1    crimes occur in the City of Boston, it only helps him and helps

2    the community, that he be provided with substance abuse

3    treatment as probation considers it to be necessary or

4    appropriate, mental health counseling, the same thing, drug

5    testing up to 104 tests per year, a recommendation to restart

6    and a requirement, the MRT.

7         On the supplemental memorandum, your Honor, I added a

8    relatively narrow geographic restriction for the area around

9    Norfolk Park.  That's the area where both his gun offenses took

02:28PM 10    place.  It's an area where a lot of the guys he hangs out with

11    live.  It will not interfere with him, assuming that otherwise

12    he be entitled to live in his mother's residence, and that

13    remains the same.  It will not restrict that, but it will help

14    him to stay away from situations and people and places where he

15    is more likely to encounter risks and the opportunities to make

16    bad decisions.

17         THE COURT:  Let me interject there.  On the proposed

18    geographic restriction, I think there may be a street name

19    missing from your map.

02:28PM 20         MR. WORTMANN:  My apologies.

21         THE COURT:  It's not clear, it goes Talbert Avenue,

22    I'm going clockwise, Dorchester Avenue.

23         MR. WORTMANN:  Right.  Then it says Dot Avenue.

24         THE COURT:  Dot Avenue, it's same thing, then you say

25    Morton Street, which I think if you look at the bottom of the

1   map, Morton Street actually angles down.  It looks like there's

2   a street between Morton and Dorchester.

3          MR. WORTMANN:  I think there is, and I'll be happy to

4   correct that, your Honor, my apologies.

5          THE COURT:  All right.  Then on up to Blue Hill Ave.

6   and back over.  I don't know what the name of that street is,

7   but I don't think it's Morton Street.

8          MR. WORTMANN:  No, I think you're exactly right, and I

9   do apologize for that, but if your Honor is inclined to allow

02:29PM 10   that, I will provide you and counsel with a corrected one this

11   afternoon.

12          THE COURT:  All right.

13          MR. WORTMANN:  Unless your Honor has any questions...

14          THE COURT:  Let me hear from Mr. Garrity.

15          MR. GARRITY:  Your Honor, as Mr. Wortmann talked

16   about, I think he minimizes to some extent, Mr. Belin's

17   upbringing was chaotic.  I think the PSR lays it out in some

18   detail, but I think the reality is, like a number of children,

19   he didn't have a father figure.  I think his father or a person

02:30PM 20   he considered to be his father was incarcerated, and he really

21   didn't have a whole lot of contact with that individual.

22          According to his mother, he was doing well up until I

23   think seventh grade, was a good student.  That's when things

24   went off the rail, and I think it's pretty evident from the PSR

25   and from everything else I've seen that's when the mental

1    health issues really kicked in.  He got a little counseling,

2    according to the PSR, around the age of 11.  I think he had

3    counseling for about a year, year and a half, but from what I

4    have seen, it doesn't appear he got any intensive, long-term

5    treatment that I think is clear he really needs, and I think

6    those mental health issues led him to self-medicate by way of

7    marijuana, by way of alcohol and led him into a number of the

8    issues that I would submit overinflated his criminal history

9    category.

02:31PM 10        He was a young individual, still is relatively young,

11    but when he admitted a lot of these crimes that drove up his

12    criminal history score, he was either a teenager in his early

13    20's, an individual with mental health issues without a strong

14    father figure with a pretty chaotic background thrown into the

15    midst of what I think the government realistically describes as

16    kind of somewhat a war zone, but despite that and despite all

17    of the police reports the government submitted to you, there's

18    no indication whatsoever that Mr. Belin ever used a gun,

19    brandished it, shot a gun.

02:31PM 20        I know Mr. Wortmann talks a lot of about gun violence

21    in Boston, and I don't dispute that whatsoever.  I think it's

22    the reality of the situation in Boston, but there's no

23    indication he ever utilized a gun in a violent manner, and I

24    think it could be a fair reading of what's in the PSR in terms

25    of Mr. Belin being a shooting victim, he had the weapon that

1   day simply as a means of self-defense rather than as an

2   offensive weapon.

3          Judge, I think the 84 months that the government is

4   asking for is over the top.  Certainly a message has to be sent

5   to Mr. Belin because of his prior conviction that he can't

6   engage in this sort of conduct again.  A message has to be sent

7   to the general public that gun crimes can't be countenance, but

8   I think 37 months is not a light sentence.  That's the sentence

9   we're requesting.  I think 84 months is just way over the top

02:33PM 10   given the facts of this case.

11          Mr. Wortmann talked about --

12          THE COURT:  37 months is effectively time served,

13   isn't it?

14          MR. GARRITY:  It is, your Honor.  And he's been

15   warehoused, hasn't received much, if any, counseling while at

16   Plymouth, so the time he spent in jail really hasn't addressed

17   any of the underlying issues, but he'll be under close

18   supervision.

19          The probation office, if you impose the curfew that

02:33PM 20   Mr. Wortmann has asked for along with the no drinking

21   condition, which we really don't oppose, I think that will also

22   serve to protect the public, so I guess the question is how

23   much is enough in terms of punishment?

24          There's no indication at all he used that weapon, no

25   indication that he was going to Norfolk Park.  He was walking

1    with these other individuals on the sidewalk towards the park

2    and no indication that was his destination.

3         I don't dispute that perhaps the way in which he

4    interacted with the officer that he could have handled that

5    better, but I don't think any of this warrants an 84-month

6    sentence.  He shouldn't be punished for the violent gun crimes

7    of others, and if I read the government's memorandum correctly

8    and hear what they're saying correctly, they're in effect

9    saying individuals like Mr. Belin who possess guns, that that

02:34PM 10   geographical area per se should get some sort of enhancement.

11         I don't think that's appropriate, I don't think the

12   guidelines call for that, I don't think the facts of this case

13   call for it.  I think that given his background, the fact that

14   many of his crimes of conviction took place when he was a young

15   individual suffering what I say is some pretty severe mental

16   health issues, I think the 37 months is more than enough along

17   with the recommendations I've asked for when he's on

18   supervision, mental health treatment, substance abuse

19   treatment, vocational treatment, I think all of those will

02:35PM 20   address the issues that led Mr. Belin to being before the Court

21   and have led Mr. Belin to being before other courts.

22         THE COURT:  Okay.  Mr. Wortmann, any reply?

23         MR. WORTMANN:  Well, your Honor, what it's all about

24   is possessing the gun.  Every shooting starts with one thing,

25   and that's with somebody with a gun in their waistband or in

1    their pocket, and it gives them the opportunity to make bad

2    decisions, and every year 250, 350 people end up being the

3    victims of bad decisions, and, you know, it would be great if

4    we could say well, oh, Johnny Jones, he's going to carry a gun

5    illegally, but he's not going to use it.

6         You can't make that decision, and in order to change

7    the quality of life in these neighborhoods, we got to get rid

8    of the guns, and that's why general deterrence here is so

9    important and particularly with somebody like Mr. Belin, who

02:36PM 10   did it once, got caught red-handed, got a pretty good sentence

11   from the state court system, and then, you know, literally

12   months after he gets out, he's doing it all over again and

13   doing it in a way that's far more dangerous.

14        I think 84 months is an extremely appropriate sentence

15   not just because it's a gun case but because it's a gun case

16   that was committed in the way that it was by the person who the

17   defendant has shown himself to be.

18        THE COURT:  Yes, Mr. Garrity.

19        MR. GARRITY:  With respect to the general deterrence

02:36PM 20   argument, in reality, I guess, you know, general deterrence

21   only affects those who are going to hear about his sentence and

22   know what his sentence was.  His circle of people that he

23   interacts with are going to hear if you give him the sentence

24   I'm asking for that he got double what he got before, and I

25   think a three-year sentence is not a short period of time.

1          That would send the message of general deterrence, and

2    the government submitted to you a number of police reports as

3    exhibits.  There's not one piece of paper in there that

4    indicates that Mr. Belin ever engaged in gun violence, and he

5    was a shooting victim.  I think there's every reason to believe

6    he had that for self-defense, just as you could reasonably read

7    the evidence that he had it for other purposes, but I think

8    given the fact that none of those reports, none of the prior

9    convictions ever referred to him using a gun, I think there's a

02:37PM 10   good reason to believe he had that gun for self-defense.

11          THE COURT:  All right.  Mr. Belin, do you wish to

12   address the Court before I impose sentence?

13          THE DEFENDANT:  Yes, I do.  I just want you to know

14   that I do take responsibility.  I take full responsibility for

15   having the gun on me was wrong, I shouldn't have had it, and it

16   was just that I feel I went to trial because I feel as though

17   that I was being treated unfairly as far as what happened on

18   the scene, as far as everything that I went through, going to

19   Devens, everything, as far as everything I went through, and I

02:38PM 20   never got a chance to, you know, plead out to any of my actual

21   guidelines, so that's the reason why I really went to trial

22   because I just wasn't trying to plead out to 15 years.

23          I felt as though going to trial -- and I was offered a

24   conditional plea.  I wanted all my rights to be reserved, not

25   just what was within the conditional plea, and I just want you

 1   to know I take full responsibility for having the gun on me.  I

 2   always did.

 3          THE COURT:  Okay.  Thank you.  All right.  There are a

 4   lot of issues I guess I want to address, and I'll try to go

 5   through them one at a time.  I guess first I agree

 6   wholeheartedly with Mr. Wortmann's view of guns and the effect

 7   that they've had not just in this city but nationwide.

 8          I certainly believe that people in the city and in the

 9   African-American community or the Hispanic community are not

02:39PM 10  entitled to less law enforcement or less vigorous law

11   enforcement than other parts of the state.  Guns tend to make

12   the lives of those communities, the people in those communities

13   more miserable.

14          They don't tend to affect people living in the

15   suburbs, as many of us do, and I think it's a real issue.  It

16   needs to be taken seriously, and people who carry firearms

17   illegally or misuse them or use them at all ought to be

18   punished for the behavior.

19          Having said that, I can't hold Mr. Belin liable for

02:40PM 20  what other persons have done.  I have to judge him as an

21   individual.  Of course, everything happens in a context, but I

22   can only hold him liable for what he was done, and I should

23   add, as an afterthought, I am not punishing him for going to

24   trial in any way, shape or form.

25          In terms of the characteristic of the offense that he

1   had extra rounds of ammunition, which made it more likely that

2   he intended to use them, I agree that does make this a more

3   serious case than most, similar types of cases.  The marijuana

4   is a bad fact as well in terms of assessing his behavior and

5   assessing the appropriate punishment, as is, of course, the

6   obliterated serial number, although that's taken into account

7   in the guideline calculation.

8        The location of the offense at a park on the edge of a

9   playground, I take the point.  I think there is only so much

02:41PM 10   weight you can put on that.  It's a fact of the matter in the

11   city that almost anywhere you are is near something, a

12   playground, a school, a church, a home where children live.

13   It's part of the problem, every time guns are discharged, it

14   seems an innocent person is hit, so it's a point, but I don't

15   put too much weight on it.

16        I agree that it's a negative fact that he was on or

17   under supervision for another criminal offense, although,

18   again, that's reflected in the guideline calculation.  In terms

19   of the defendant's upbringing, I agree with the general

02:42PM 20   proposition, and it cuts across all strata of society, on the

21   one hand, the defendant is not responsible for who his parents

22   are and how he was raised, and his father was incarcerated.

23   That's not his choice or his fault, and, therefore, ought to

24   make him less culpable to some extent.

25        It's also true that someone raised in that environment

1    is more likely to commit more crimes, to repeat the patterns

2    that have already been set.  The inverse is true for so-called

3    white collar criminals.  You might argue that they're more

4    culpable because they've had many advantages, some of them, and

5    they're less likely to recidivate.

6         It's hard to know what to do with all of this.  I take

7    into account, of course, as I must, the fact that the defendant

8    had a difficult childhood and that he's not responsible, again,

9    for the choices of his parents.

02:43PM 10        That is a factor that needs to be weighed in the scale

11   here, but he's also an adult who needs to be responsible for

12   his own choices.  I do want to add that I have never understood

13   the argument, which has gained quite a bit of currency lately,

14   that it doesn't matter if children, particularly boys, have

15   fathers or not, that there's lots of different alternative

16   families and that we, as a society, are being unfairly

17   judgmental of single mothers or otherwise difficult

18   child-raising circumstances.

19        I think as a general proposition children are better

02:44PM 20   off with parents, with parents who are home, who are employed

21   and are making their best efforts to raise them.  That is to me

22   perfectly obvious and that we ought not to back away from that

23   fact, but, again, Mr. Belin didn't have that choice.  He

24   unfortunately is making bad choices for his own children, but

25   I'm not going to give him a shorter or longer sentence based on

1    that either.

2          And I apologize, I'm sort of hopping around here to a

3    number of different topics somewhat quickly.  It's true that

4    the defendant has spent three years in custody.  I'm sure that

5    whether in state custody or federal custody that he has not had

6    an opportunity to participate in the programs that he would

7    have had had he been sentenced earlier to prison.  I'm not sure

8    what to say about that.  He did go to trial, of course, which

9    was his right.

02:45PM 10          It does take longer to get a case ready for trial, and

11   he did have the mental health evaluation, which I was requested

12   to order and I did order, and, frankly, the last six months or

13   so have been delays occasioned by the *Johnson* case and related

14   issues, which have worked very much to the defendant's favor.

15          I think otherwise he would be looking at a quite

16   significant sentence, and so on the whole, I think the

17   defendant has benefited from the delay in sentencing, although

18   I recognize it is harder to do the time in detention rather

19   than in a federal facility as a general proposition,

02:46PM 20   particularly due to the lack of programs.

21          It does appear to me based on the forensic report that

22   the defendant does have mental health issues.  He does, I

23   think, require treatment for that.  I'm obviously no expert.

24   I'm sure it contributes to some extent to his criminal

25   behavior, but, again, it does not make him any less dangerous,

1    and the defendant's criminal history, you know, whether or not

2    *Johnson* applies and whether or not he was on probation for

3    another offense is significant.

4         He has been under some form of criminal justice

5    supervision or incarceration for large chunks of his life.  He

6    has been repeatedly in the criminal justice system and has

7    amassed a criminal record that is significant given his

8    relatively short life so far.

9         He has been able to dodge much more significant

02:47PM 10   consequences because of the Supreme Court's ruling, but the

11   offenses are there, nonetheless.  He does have four resisting

12   arrest convictions as well as assault and battery on a police

13   officer.

14        So, with all of that, I think as I see it, it is an

15   unusual situation to go above the high end of the guidelines.

16   I have done it from time to time.  It is and ought to be rare,

17   whether as the matter of the guidelines or under 3553, for

18   cases that have unusual or significant characteristics or

19   attributes or factors that take them out of the heartland.

02:48PM 20        Even with all the factors pointed out by Mr. Wortmann

21   here, it's not clear to me that I need to go above the high end

22   of the guidelines.  I think there is a good argument for it,

23   and Mr. Wortmann has made it, but I think I'm not quite

24   convinced, and what I'm going to do is to sentence at the high

25   end of the guidelines at 71 months but not go beyond it, and I

1  do that with some reservations given my obvious concerns about

2  the possibility of the defendant's propensity for violence.

3  I do think that the curfew, the associational

4  restrictions and the geographic restrictions are appropriate.

5  I know Mr. Wortmann's position because he advocates for this

6  routinely, and I agree with the basic proposition that one of

7  the problems that defendants have is they come out of the

8  system, they come out of prison, and they go back right to the

9  same neighborhood and begin hanging out with the same people

02:49PM 10  doing exactly what they did before they went in, and it's a

11  very easy thing to do to fall back into old patterns and to not

12  really have a chance to get on your feet and to try turning

13  your life in a different direction, whether it's in terms of

14  not only just abiding by the law but also maintaining

15  employment, getting yourself educated, taking care of your

16  children and so on, so I do think those restrictions are

17  appropriate.

18  Again, they're not intended to punish but to give the

19  defendant a fair chance under the circumstances to again point

02:50PM 20  his life in a different direction from where it's been pointed

21  thus far.

22  So for all of those reasons, and I'll state the formal

23  reasons in a moment, I am going to sentence him to 71 months in

24  prison.  I'm sorry, Mr. Wortmann, did the government -- what

25  was your recommendation of the length of supervised release?

1          MR. WORTMANN:  Three years, your Honor.

2          THE COURT:  Mr. Garrity, what's your view of that?

3          MR. GARRITY:  Your Honor, that's what I had

4     recommended as well.

5          THE COURT:  All right.  I think that's appropriate as

6     well given all the factors and circumstances presented here.

7     So with that, what I'm going to do is to formally state the

8     sentence I'm going to impose followed by a formal statement of

9     the reasons to the extent I haven't done so already, and then

02:51PM 10     I'll give counsel a final opportunity to make any corrections

11     or objections.

12          I'm sorry, Mr. Wortmann, your judicial recommendations

13     as opposed to the terms of supervised release, your judicial

14     recommendations were --

15          MR. WORTMANN:  Mental health counseling, your Honor,

16     access to alcohol counseling and any vocational training that's

17     available while he's incarcerated.

18          THE COURT:  All right.  Did I hear you say Restart as

19     well?

02:52PM 20          MR. WORTMANN:  Yes, your Honor, the conditions that I

21     recommended were prohibition on alcohol, the associational and

22     geographic restrictions, the curfew for the first 12 months to

23     be enforced by electronic monitoring, substance abuse and

24     mental health treatment and testing and a recommendation for

25     Restart and a requirement for the MRT Program if it's

considered to be appropriate by probation.

THE COURT:  All right.  Would the defendant please stand.

MR. GARRITY:  I'm sorry, Judge.

THE COURT:  I'm sorry, would the defendant please stand.  Pursuant to the Sentencing Reform Act of 1984 and having considered the sentencing factors set forth at 18 United States Code, Section 3553(a), it is the judgment of the Court that the Defendant King Belin is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 71 months.

The Court makes judicial recommendations that the defendant participate in substance abuse treatment while in Bureau of Prisons' custody, that the defendant participate in mental health counseling while in custody and that the defendant receive appropriate vocational training while in custody.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years.  Within 72 hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the district to which the defendant is released.

While on supervised release, the defendant shall comply with the following terms and conditions:

The defendant shall not commit another federal, state

or local crime and shall not illegally possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.

The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 104 tests per year as directed by Probation.

The defendant shall submit to the collection of DNA sample as directed by Probation.

The defendant shall comply with the standard conditions that have been adopted by the Court, which are set forth at 5D1.3C of the Sentencing Guidelines and which will be set forth in detail in the judgment.

The defendant is prohibited from possessing a firearm, destructive device or other dangerous weapon.

The defendant is to refrain from any use of alcohol or alcoholic beverages.

The defendant is to participate in a mental health treatment program as directed by probation.

The defendant shall be required to contribute to the costs of services for such treatment based on the ability to pay or availability of third-party payment.

The defendant shall participate in a program for substance abuse counseling as directed by probation, which

1    program may include testing, not to exceed 104 drug tests per

2    year to determine whether the defendant has reverted to the use

3    of alcohol or drugs.

4         The defendant shall be required to contribute to the

5    costs of services for such treatment based on the availability

6    to pay or availability of third-party payment.

7         The defendant shall participate in educational and/or

8    vocational services programs as directed by Probation.  Such

9    programs may include G.E.D. preparation, classes designed to

02:55PM 10   improve his proficiency and skills, including reading, writing,

11   mathematics and computer use, job readiness and skills

12   development training.

13        Again, he'll be required to contribute to the costs of

14   services for such program based on the ability to pay or the

15   availability of third-party payment.

16        During the first year while on supervised release, the

17   defendant shall abide by a curfew from 9 p.m. to 7 a.m. each

18   day.  The curfew shall be enforced with electronic monitoring.

19   The defendant is not to interfere with the monitoring

02:56PM 20   equipment.  The defendant may leave his home between 9 p.m. and

21   7 a.m. only for medical or other emergencies or with the

22   expressed permission of the probation department in advance.

23        While on supervised release, the defendant shall not

24   contact or be in the company of the following individuals

25   without the expressed advanced permission of Probation:

1    Rudy Antenor, Reggie Boyd, Giovanni Cooley, Ellis Golden,

2    Demarcus Kirkland, Derek Kirkland, Dwan Knight, Corey Mathis,

3    Jamal Nation, Eric Norman, Kareem Smith, Brian Stokes, Rafael

4    Wallace or Calvin White.

5              While on supervised release, the defendant is

6    prohibited from entering a geographic area in the City of

7    Boston bounded by Talbot Avenue, Dorchester Avenue, a street to

8    be identified by the government that runs between Dorchester

9    Avenue and Morton Street, Morton Street and Blue Hill Avenue

02:57PM 10   without the expressed advanced permission of probation.

11             Nothing in the restrictions shall prohibit the

12   defendant from traveling on those named roads or traveling on

13   any bus or subway operating within that zone provided that he

14   does not get off the bus or get off the train anywhere within

15   the zone, and, obviously, that includes the Orange Line which

16   crosses the zone.

17             The Court makes a recommendation that the defendant

18   consider and be accepted to the Restart Program and the MRT

19   Program as well, and the Court grants the government's motion

02:58PM 20   for an entry of order of forfeiture, and the forfeiture will be

21   included in the judgment.

22             It is further ordered that the defendant shall pay the

23   United States a special assessment of $100, which shall be due

24   immediately.

25             Do counsel have any addition, correction or objection

1    to that sentence not previously stated?  Mr. Wortmann.

2         MR. WORTMANN:  Your Honor, I assume you're ordering no

3    fine because he has no ability to pay?

4         THE COURT:  Correct.  Mr. Garrity.

5         MR. GARRITY:  Your Honor, can I confer?

6         THE COURT:  Yes.

7         MR. GARRITY:  Judge, Mr. Belin has asked me to object

8    to the curfew as a general matter.

9         THE COURT:  Yes.

02:58PM 10        MR. GARRITY:  But beyond that, just one question.  I

11   know you indicated that he can leave the home between 9 p.m.

12   and 7 a.m. for medical purposes?

13        THE COURT:  For medical emergencies or other

14   emergencies or with the expressed permission of Probation.  In

15   other words, let's say that he has a program of evening classes

16   and he needs to get home by 10:00.  If he makes that

17   arrangement with Probation, they approve, he can do it,

18   otherwise 9 p.m. to 7 a.m. curfew.  He needs to be at home.

19        MR. GARRITY:  Is it possible to add in for work

02:59PM 20   purposes or educational purposes as well?

21        THE COURT:  Again, that's fine if Probation approves

22   in advance, if he gets a job on a night shift.  I mean, there

23   might be different ways that this could play out, but without

24   Probation's permission for legitimate educational employment

25   purposes, training purposes, it's either, you know, permission

1    of Probation or medical emergencies, other emergencies, if his

2    house catches file, for example.

3         MR. GARRITY:  Your Honor, Mr. Belin does object as a

4    general matter to the curfew and the electronic monitoring.

5         THE COURT:  All right.  That objection is overruled.

6    The sentence is hereby stated.  In terms of the formal reasons

7    for the sentence, it is a guideline sentence imposed within the

8    relevant guideline range for the reasons indicated.  It is at

9    the high end of the guidelines, again, for the reasons

03:00PM 10   indicated.

11        The term of supervised release and the various

12   conditions are required to help the defendant adjust to life

13   outside of prison and to ensure adequate supervision.  I'm

14   imposing no fine as he's established he's not able and even

15   with the use of a reasonable installment schedule is not likely

16   to become able to pay all or part of the fines required under

17   the guidelines.

18        All right.  Let me give Mr. Belin his advice of

19   rights.  Mr. Belin, you can appeal your conviction if you

03:00PM 20   believe that there was some fundamental defect or other error

21   requiring reversal.  You have the right to appeal your

22   sentence, particularly if you think the sentence was contrary

23   to law.  If you're unable to pay the costs of appeal, you may

24   ask permission to have those costs waived and appeal without

25   any pain.

1    You must file any notice of appeal within 14 days

2    after the entry of judgment, and if you request, the clerk will

3    immediately prepare and file a notice of appeal on your behalf.

4    Before we break, Mr. Belin, I know you're not happy

5    with my ruling on the search, I know you were not happy with

6    the jury's verdict, and I'm sure you're not happy with my

7    sentence.

8    I do, in fact, wish you well.  You've made some

9    serious mistakes, you're paying a heavy price for it.  I hope

03:01PM 10   that, for whatever reason, you do turn your life around, that

11   you move your life in a different direction, one that does not

12   involve gun, among other things, but that's obviously entirely

13   up to you.

14   It's your choice, and there are people who can help

15   you with your issues and your problems, who can give you

16   counseling and training, but at the end of the day, you know,

17   your life is what you make of it.  It's entirely up to you.  It

18   is your responsibility.  You said you take responsibility for

19   having the gun on the street, I appreciate that, and, you know,

03:02PM 20   you need to take responsibility for your life as well and those

21   of your children, for that matter.

22   All right.  Is there anything further, Mr. Wortmann?

23   MR. WORTMANN:  No, your Honor.

24   THE COURT:  Mr. Garrity.

25   MR. GARRITY:  No, your Honor.

1          THE COURT:  Thank you.

2          THE CLERK:  All rise.

3          (Whereupon, the hearing was adjourned at

4     12:30 p.m.)

5

6                    C E R T I F I C A T E

7

8     UNITED STATES DISTRICT COURT )

9     DISTRICT OF MASSACHUSETTS ) ss.

10    CITY OF BOSTON )

11

12          I do hereby certify that the foregoing transcript,

13    Pages 1 through 40 inclusive, was recorded by me

14    stenographically at the time and place aforesaid in Criminal

15    Action No. 13-10048-FDS, UNITED STATES OF AMERICA vs.

16    KING BELIN and thereafter by me reduced to typewriting and is a

17    true and accurate record of the proceedings.

18          Dated this 23rd day of December, 2015.

19

20                    s/s Valerie A. O'Hara

21          _____

22          VALERIE A. O'HARA

23          OFFICIAL COURT REPORTER

24

25